98 N.J. Super. 393 (1967)
237 A.2d 508
RALPH MOSSBERG, PLAINTIFF,
v.
STANDARD OIL COMPANY OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 15, 1967.
*396 Mr. Howard A. Goldberger for plaintiff (Messrs. Goldberger, Siegel & Finn, attorneys).
Mr. William L. Dill, Jr. for defendant (Messrs. Stryker, Tams & Dill, attorneys).
HAROLD A. ACKERMAN, P.J.D.C. (temporarily assigned).
This is an action to recover lost wages under an individual employment contract for the period commencing October 13, 1964 and ending February 1, 1965.
On December 6, 1937 plaintiff entered into an employment contract with defendant Standard Oil Company of New Jersey (subsequently Humble Oil & Refining Company) which provided, in pertinent part:
"Company hereby agrees to pay employee said salary * * * as in its opinion may be justified during the continuance of such employment and until 60 days after company shall notify employee that it desires to discontinue his service."
Plaintiff has been continuously employed by defendant in the Chemical Products Department of its Bayway Refinery.
In 1944 the Independent Petroleum Workers of New Jersey, hereinafter referred to as Independent, was certified by the National Labor Relations Board as the exclusive bargaining agent for certain of defendant's employees at its Bayway Refinery, in accordance with the statutory mandate of § 9(a) of the National Labor Relations Act, 29 U.S.C.A. § 159(a). In July 1945 a collective bargaining agreement was executed with the aforesaid union fixing the rate of pay, *397 wages, hours and other conditions of employment for those employees in the bargaining unit.
Although plaintiff was not a member of Independent or subsequent unions, his wages were fixed by the collective bargaining agreement for a period of over 20 years. He was always on an hourly wage and for the bulk of his employment was classified as an operator. During the course of his lengthy employment, however, plaintiff was variously employed as a substitute foreman, substitute shift foreman, and supervisor. With the exception of these designations he was included within the regular classification of operator. As such, he was a member of the bargaining unit represented by the particular union certified as the exclusive agent. It must be noted, however, that plaintiff was disqualified by Independent in 1950 because he was working as a supervisor in White Oil. When plaintiff was not engaged as an operator exclusively, his salary was adjusted by defendant and his classification was occasionally altered.
On or about October 13, 1964 Independent of Bayway, which had been certified by the National Labor Relations Board and was then the exclusive representative for the purposes of collective bargaining of certain of defendant's employees, including the unit of which plaintiff was a member, called a strike. The members of the unit were thereafter absent for a period of some 16 weeks. Plaintiff has instituted this suit to recover wages allegedly due for the period of 16 weeks, relying upon his 1937 employment contract.
The strike in question commenced on October 13 at midnight. Plaintiff was then engaged as an operator of the butyl extraction unit. The testimony is in dispute as to when he first learned of the strike. He claimed that he first knew of the work stoppage on the 15th when he reported for work for the 7 A.M.-3 P.M. shift and was told by a guard that he could not work. William J. Kerns, defendant's refinery safety advisor, testified that on the evening of the 13th he was assigned to operate the crude butyl unit if a work stoppage occurred. In anticipation of this contingency he *398 went to the unit at about 6 P.M. According to Kerns, plaintiff, who was there, reported that he had received a call from the president of the union, who had alerted him to the impending walkout. In my judgment, Kerns' version is more credible.
On the Tuesday following the commencement of the strike, plaintiff went to defendant's office to show Sweeney, an employee in the personnel office, the individual employment contract and, in addition, to make certain payments on a loan and arrange for Blue Cross coverage. Plaintiff subsequently returned to the Bayway office building once a month to pay defendant for the aforesaid loans and Blue Cross coverage.
Plaintiff returned more frequently to the vicinity of the refinery in order to discover if there still remained a picket line. It is undisputed that he went on the picket line sometime in the latter part of January, picketed for two hours a day for three days and was compensated by the union in the amount of $15.
During the whole period of the strike plaintiff spoke to no supervisor or department head. He did, however, correspond with defendant as to his individual rights under the 1937 contract. This correspondence amounted to one letter and a reply dated December 18, 1964. The reply, by J.C. Hickey of the Employee Services Division, stated in pertinent part:
"We are checking further to see what the status of this contract is at this time and will be in touch with you at a later date."
After the strike was settled plaintiff joined Local 866, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, who were the representative agents for collective bargaining. He received the rate agreed upon by the union for operators. Pursuant to the collective bargaining agreement in force before the strike, plaintiff had been receiving $3.78 per hour, plus shift differential and an allowance for a thrift plan.
*399 The meritorious issues in this matter are:
1. Whether a collective bargaining agreement negotiated by a certified union supersedes an individual employment contract.
2. Whether a nonunion member is bound by the provisions of a collective bargaining agreement negotiated for a bargaining unit of which said member is a part.
3. Whether plaintiff is a supervisor and, consequently, not within the purview of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.
4. Whether the 1937 employment contract has been abandoned by the parties.
5. Whether plaintiff, as a matter of fact, made a good faith effort to work during the strike.

I
The National Labor Relations Act, 29 U.S.C.A. § 159(a) provides in pertinent part:
"[The] Representative designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment."
In order to determine the status of plaintiff's individual employment contract, 29 U.S.C.A. § 159(a) represents the pivotal point of departure. To ascertain the import and extent of this vital section of the National Labor Relations Act, resort to applicable case law and legal commentary is necessary.
Ordinarily, under modern labor relations acts, a union chosen by a majority of the employees is the exclusive bargaining agent of all employees, whether members of the union or not. MacKay v. Loew's, Inc., 182 F.2d 170 (9 Cir. 1950), certiorari denied 340 U.S. 828, 71 S.Ct. 65, 95 L.Ed. 608 (1950). The leading case in the area under discussion *400 is J.I. Case Company v. National Labor Relations Board, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944). J.I. Case establishes the principles that have governed judicial thinking and, therefore, merits extended quotation:
"Individual contracts, no matter what the circumstances that justify their execution or what their terms, may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act looking to collective bargaining * * * The Board asserts a public right vested in it as a public body * * *. Whenever private contracts conflict with its functions they obviously must yield or the Act would be reduced to a futility.
The workman is free, if he values his own bargaining position more than that of the group, to vote against representation; the majority rules, and if it collectivizes the employment bargain, individual advantages or favors will generally in practice go in as a contribution to the collective result." 321 U.S., at p. 339, 64 S.Ct., at p. 580.
Succeeding cases make it clear that the majority union has the right to act as bargaining agent for all within its jurisdiction, irrespective of membership in the union. Kansas City Power & Light Co. v. National Labor Relations Board, 137 F.2d 77 (8 Cir. 1943). The recent case of National Labor Relations Board v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967) is dispositive of the present state of the law. According to the court:
"National labor policy has been built on the premise that by pooling their economic strength and acting through a labor organization freely chosen by the majority, the employees of an appropriate unit have the most effective means of bargaining for improvements in wages, hours, and working conditions. The policy therefore extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interests of all employees. * * * Thus only the union may contract the employee's terms and conditions of employment * * *. The majority rule concept is today unquestionably at the center of our federal labor policy." (388 U.S., at p. 180, 87 S.Ct., at p. 2006, 18 L.Ed.2d, at p. 1127; emphasis added)
The philosophy behind the National Labor Relations Act is aptly stated in Hoeniger, "The Individual Employment *401 Contract under the Wagner Act", 10 Fordham L. Rev. 14 (1941):
"In the case of the perfect regular employee status the employee is hired through an individual employment contract but his wages and his employment conditions are determined by the collective agreement bargained collectively for by the unit to which he belongs; it does not matter whether he is a member of the representing union or not.
The collective agreement is per se binding upon such non-union members under two presuppositions, (1) that the bargaining unit is appropriate, and that (2) the union or other bargaining agency represents the majority of the unit in question." (at p. 37)
See, also, Hanslowe, "Individual Rights in Collective Labor Relations", 45 Cornell L.Q. 25 (1959).
In the present case there is no question that plaintiff, classified as an operator of a butyl extraction unit, was a proper member of the bargaining unit. His wages had been governed by a number of collective bargaining agreements for the greater part of 20 years. There is also no question that the respective bargaining unions represented a majority of the operating unit in question.
Added impetus is given to the conclusion that plaintiff's 1937 employment contract was superseded by subsequent collective bargaining agreements by a consideration of a number of state court decisions. There is a dearth of authority in this State with respect to the issues raised herein. There is, however, a uniform recognition of the fact that the contract between employer and union not only enters into the individual contract, but it circumscribes the rights of the employer and the members of the union with respect to making individual contracts of employment. Christiansen v. Local 680, Milk Drivers, etc., 126 N.J. Eq. 508, 512 (Ch. 1940). In Pietrzykowski v. Safie, 1 Mich. App. 644, 137 N.W.2d 734, 735 (App. Ct. 1965), the court entertained an action by certain employees for alleged breach of employment contracts. The court held that the union contract superseded the individual contracts and, therefore, defendants *402 could rely on the seniority provisions of the subsequent collective bargaining agreement as a defense to plaintiff's suits for breach of their individual employment contracts.
In Quinlan v. Consolidated Edison Co. of New York, Inc., 38 Misc.2d 342, 237 N.Y.S.2d 745 (Sup. Ct. 1963), the court said:
"It is settled law in this state that under a collective bargaining agreement the union represents all the employees as to covered matters, and the employees by becoming beneficiaries to the contract give up to the union as their representatives their individual rights to sue or litigate as to the contract. Plaintiff's wages were covered by said agreement. * * * The collective bargaining agreement supersedes any individual agreements which plaintiff may have had with his employer as to matters covered by it." (at p. 747)
It is clear from the above that (1) the 1937 employment contract was superseded by the subsequent collective bargaining agreements which, as a matter of fact, fixed plaintiff's salary; (2) plaintiff, working as an operator immediately preceding the calling of the strike, was within the unit for which the union bargained collectively although not a member of the union; (3) he was classified as an operator for the greater part of his employment relationship with defendant, and (4) at the time of the strike which terminated one particular collective bargaining agreement, plaintiff's 1937 contract had long since been extinguished as a matter of law by the first collective bargaining agreement in 1945.
Some mention should be made of two cases which ostensibly contradict the above conclusion. In MacKay v. Loew's, Inc., supra, the court stated that a collective bargaining agreement is not a contract of employment but, rather, an agreement between the union and the employer laying down certain conditions of employment which are to be incorporated into the separate contracts of hiring with each employee. The court further added that an employee has rights under his individual contract of employment and, in addition, may sue as a third-party beneficiary to enforce the provisions in the collective bargaining agreement. MacKay, *403 at first blush, indicates that an individual contract is not superseded by a collective bargaining agreement, but closer analysis reveals that the individual contract is only given force and effect if it can in no way frustrate the policy of the National Labor Relations Act and does not conflict with a collective bargaining agreement. Where, as in the instant case, the collective bargaining agreements since 1945 controlled and governed as to hours and conditions of employment, it would be against the policy of the National Labor Relations Act, as interpreted by the J.I. Case decision, to recognize in any manner the wage provisions of the 1937 contract or, for that matter, any other provisions within the union's jurisdiction to negotiate. The dictum in MacKay does not militate against the view that any matters covered by the collective bargaining agreement supersede any like provisions in the individual employment contract.
Crawford v. Trans World Airline, 27 N.J. Super. 567 (Cty. Ct. 1953), involved a claim by a stewardess for personal injuries sustained. At issue was the applicable law. An original contract of hiring was executed in Missouri and subsequent salary increases were achieved by union negotiations. Plaintiff contended that these salary increases created a new contract and, since the increases were achieved while she was employed and based in New Jersey, New Jersey law should be applied. The court held that changes in salary under an existing valid contract was only a modification and did not destroy the original contract.
Crawford does no violence to the conclusion reached here. That case turned on the narrow issue of conflict of laws and, more particularly, choice of law. It did not seek to meet the issue of whether an individual employment contract is superseded by a collective bargaining agreement. At most, the short opinion does nothing more than recognize the individual employment contract for the narrow purpose of determining what law governs a particular transaction. The decision, in the final analysis, can be distinguished from the instant issue as a matter of law.
*404 Thus, it remains clear that the collective bargaining agreement supersedes any individual agreement which plaintiff may have had with his employer as to matters covered by it.

II
The National Labor Relations Act, by its own terms, applies to employees. Any individual performing the duties of a supervisor is not within the pale of the act. 29 U.S.C.A. § 152(11) provides in pertinent part:
"The term supervisor means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."
The question whether an employee is a "supervisor" within the meaning of the National Labor Relations Act is a question of fact. National Labor Relations Board v. Ertel Manuf. Corp., 352 F.2d 916 (7 Cir. 1965):
"It is equally clear, however, that the employer cannot make a supervisor out of a rank and file employee simply by giving him the title and theoretical power to perform one or more of the enumerated supervisory functions. The important thing is the possession and exercise of actual supervisory duties and authority and not the formal title." National Labor Relations Board v. Griggs Equipment, Inc., 307 F.2d 275, 279 (5 Cir. 1962) (Emphasis added).
In the final analysis it is a question of fact in every case as to whether the individual is merely a superior worker who exercises the control of a skilled worker over less capable employees, or is a supervisor who shares the power of management. National Labor Relations Board v. Griggs Equipment, Inc., supra. The assumption of supervisory authority must be regular and substantial, not merely occasional and sporadic. National Labor Relations Board v. Florida Agricultural Supply Co., etc., 328 F.2d 989 (5 Cir. 1964).
*405 In light of the foregoing and the fact pattern in the instant matter, plaintiff cannot be classified as a supervisor and thereby without the pale of the National Labor Relations Act. At the particular time in question plaintiff was employed as an operator with no apparent authority to exercise any of the enumerated statutory functions embraced by 29 U.S.C.A. § 152(11). The fact that plaintiff was once disqualified by the union as a supervisor in 1950 is of no moment. As the court explained in National Labor Relations Board v. Griggs Equipment, Inc., supra:
One decision as to whether a man was a supervisor is not necessarily controlling on the other when based on the facts as they existed at two different times, several months apart. (307 F.2d, at p. 279)

III
Three pivotal questions remain, to wit: (1) the effect of a strike on the viability of the collective bargaining agreement; (2) the possible abandonment by the contracting parties of the 1937 employment contract, and (3) the factual query as to whether plaintiff was ready, willing and available for work.

(1)
The viability of the collective bargaining agreement after the calling of a strike is relevant to this case. It is basic contract law that when a contract is terminated the rights and obligations under that contract are also terminated. 1 Williston, Contracts (Jaeger ed. 1957), § 90. When the strike was called in the instant matter the collective bargaining agreement had expired of its own force. Collective bargaining agreements have, however, been viewed by the courts as sui generis. Archibald Cox, in "Legal Nature of the Collective Bargaining Agreement," 57 Mich. L. Rev. 1, 21 (1958), has analogized a collective bargaining contract to a trust with the chose in action as the res. He suggests that the union, as sole obligee, is empowered to play a *406 continuing role in the administration of contracts intended for the benefit of a large and ever changing group of beneficiaries who may have divergent interests. It has also been posited that an in futuro effect might be given to the collective bargaining contract based upon an implied contract or quasi-contract theory. See, "Rights and Obligations Upon Termination of the Collective Bargaining Agreement," 16 Rutgers L. Rev. 416, 427 (1962).
Assuming, arguendo, that the collective bargaining agreement relevant to the claim in question had been effectively terminated and did not give rise to an in futuro effect, one is next presented with the issue of the effect of the 1937 employment contract and whether its terms are revived, giving plaintiff standing to sue upon it. A scrutiny of the cases heretofore cited impresses this court that the 1937 contract was effectively and unalterably superseded by the 1945 collective bargaining agreement which was subsequently renegotiated in the ensuing 20 years. At the very most, plaintiff's claim is based upon no contract at all. That is, assuming the termination of the collective bargaining agreement and the ineffectiveness of the 1937 employment contract vis-a-vis the subsequent union-negotiated contracts, plaintiff, an allegedly wrongfully discharged employee, can only recover for the work done on a day to day basis. 1 Williston, Contracts (Jaeger ed. 1957), § 90.
Plaintiff's claim (even assuming for argument sake the revival of the 1937 employment contract) is, as a matter of fact, groundless for reasons to be discussed below.

(2)
Defendant has, in his brief, competently suggested that the 1937 employment contract had been abandoned by the contracting parties and therefore is of no force and effect. The determination of whether parties to a contract intend a rescission need not be made solely from express words; it may be inferred from all the circumstances. Their *407 intention must however, be clearly expressed. Invengineering, Inc. v. Foregger Company, 293 F.2d 201 (3 Cir. 1961). As the court stated in In Re Schanzer's Estate, 7 A.D.2d 275, 182 N.Y.S.2d 475 (App. Div. 1959), affirmed 8 N.Y.2d 972, 204 N.Y.S.2d 349, 169 N.E.2d 11 (Ct. App. 1960):
"A contract duly executed and thereafter abandoned or ignored by the contracting parties is unenforceable. Moreover, an abandonment may be inferred from the conduct of the parties and the attendant circumstances." (182 N.Y.S.2d, at p. 479)
The instant fact pattern presents an attractive situation for the application of this basic contract principle. Plaintiff's salary and wages have been governed since 1945 by a collective bargaining agreement. In effect, the 1937 contract has been virtually ignored and legally abandoned. Plaintiff's reliance on this contract 30 years after its execution and 22 years after the negotiation of the first collective bargaining agreement does not, in the court's opinion, improve the viability of the employment contract. The conduct of the parties and the attendant circumstances have, as a matter of law, worked an abandonment of said contract, thereby rendering it unenforceable.

(3)
As a matter of fact, plaintiff's claim in the instant matter is without merit. His efforts to work during the strike were, at most, superficial. The following facts are relied upon by plaintiff in order to show his willingness and good faith effort to work:
(1) Two days after the strike commenced he reported for work and was told by a guard that he could not work but would have to see "them" over at the office building.
(2) On the following Tuesday plaintiff went to the office building and showed a Mr. Sweeney his individual contract, *408 made certain payments on a loan and paid for his Blue Cross coverage.
(3) Plaintiff subsequently returned once a month to pay defendant for the aforesaid loans and Blue Cross.
(4) Plaintiff sent one letter inquiring about the status of his contract and received a reply stating that defendant would inquire into the matter. No action was thereafter taken.
(5) Plaintiff returned frequently to the vicinity of the strike and, in fact, picketed for two hours a day for three days, receiving $15 from the union.
These facts admit of two legal conclusions. If the collective bargaining agreement had been terminated and, assuming that the individual employment contract had either been abandoned or superseded by the 1945 collective bargaining agreement, plaintiff's claim based upon a quantum meruit recovery is frivolous. He simply did not work and, there being no contract, defendant had absolutely no obligation to provide work during the strike period of 16 weeks.
Assuming, arguendo, that plaintiff's individual employment contract is enforceable, defendant has not breached that contract. The facts do not evince any willingness, availability, or good faith effort on plaintiff's part to work during the strike. The facts do not admit of a finding that he legitimately sought work and was wrongfully repulsed by his employer, Humble Oil & Refining Company.

CONCLUSIONS
For reasons enumerated above I find that:
1. The collective bargaining agreements superseded the 1937 employment contract between plaintiff and defendant.
2. Plaintiff was bound by the provisions of said collective bargaining agreements as a member of the bargaining unit although not a member of the union.
3. Plaintiff, while sporadically performing supervisory duties during his term of employment, was not a supervisor *409 within the statutory ambit of the National Labor Relations Act.
4. By their actions the parties mutually abandoned the 1937 employment contract.
5. Plaintiff, by his actions, demonstrated an unwillingness to work during the period involving the labor dispute, thus, precluding him from recovery in the instant action.
Judgment will therefore be entered in favor of the defendant.