257 N.J. Super. 6 (1992)
607 A.2d 1314
JERSEY CITY POLICE OFFICERS BENEVOLENT ASSOCIATION, PLAINTIFF-RESPONDENT,
v.
CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 19, 1992.
Decided June 3, 1992.
*8 Before Judges PRESSLER, SHEBELL and SKILLMAN.
Harold J. Ruvoldt, Jr., Corporation Counsel, attorney for appellant (Paul W. Mackey, Assistant Corporation Counsel, of counsel and on the brief).
Schneider, Cohen, Solomon, Leder & Montalbano, attorneys for respondent (David S. Solomon, of counsel and on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This controversy arises out of a collective negotiation agreement between defendant Jersey City and plaintiff Jersey City Police Officers Benevolent Association (POBA), which represents all Jersey City police officers under the grade of sergeant. Jersey City appeals from an order of the Chancery Division denying it relief from an earlier consent judgment by which it had agreed to the confirmation of an arbitrator's award in favor of POBA. It argues that its consent to entry of the confirmation order had been predicated on its understanding that the scope of the arbitration had been substantially more limited than POBA later asserted it to be and consequently that implementation of the consent judgment consistent with POBA's interpretation of its literal terms was contrary to the import of the arbitration award itself. We find merit in Jersey City's assertions and accordingly we reverse and remand.
The collective negotiation agreement in question covered calendar years 1989, 1990, and 1991. Its compensation schedule *9 contained eight steps. The first seven steps were based on the number of years of employment, from one to seven. The eighth step was entitled "Detective" and provided for a salary of approximately $1,700 more than that of a seventh year officer. According to the record, there were disparities and inconsistencies in the City's designation and compensation of detectives over the years. In an effort to eliminate these problems and to improve the efficiency of the department, the City issued a memorandum during the term of the agreement eliminating the title of detective altogether and eliminating as well the extra compensation that had attended that designation. At the same time the City created the title of investigator, which was then accorded to a large number of officers. Unlike the previous detective title which was granted only after an officer had served seven years and had therefore reached the maximum non-detective salary, the investigator title, intended to reflect the actual duties assigned to the officer, was accorded to a number of officers who had been employed less than seven years, and in some cases to new appointees to the force.
Predictably, POBA complained about the loss of extra compensation for detectives, and individual grievances were arbitrated. The arbitrator concluded that those former detectives who had not been given the extra compensation in the past were deemed to have waived it. In all other respects, however, he sustained the grievances, concluding that there was a functional equivalence between the former detective title and, with stated assignment exceptions, the current investigator title. He therefore concluded that the former detectives who were designated investigators were entitled to the stipulated detective's compensation. His award, however, was cast in general terms, namely, that all officers assigned as investigators in all but the excepted cases were entitled to be compensated at the detective rate set forth in the agreement.
POBA then commenced this action by order to show cause for confirmation of the arbitration award. Prior to the return *10 date the parties reached an accord and consented to the entry of a judgment providing that
ORDERED AND ADJUDGED that the Opinions and Awards of Arbitrator Jeffrey Tener dated January 27, 1990, be and the same are hereby confirmed in their entirety, with the clarification that only the police officers who grieved their reassignments and were included in the "Conners Grievance," are entitled to submit their grievances to arbitration. All other police officers shall be subject to the procedures contained in the recently adopted provisions of the New Jersey Administrative Code (N.J.A.C. 4A:4-7.2 et seq.), and it is further
ORDERED AND ADJUDGED that the Defendant, the City of Jersey City shall comply with the Arbitration Awards and shall pay all wages due to the affected police personnel in accordance with the terms of the awards within fifteen (15) days from the date of this order.
The judgment was entered on May 31, 1990. We note further that the "Conners grievants" referred to in the judgment had all been employed for seven years or more.
Two months later, the salary adjustments not having been made in accordance with the consent judgment, POBA moved pursuant to R. 1:10-5 for an order compelling the City to do so in respect of all officers functioning as investigators irrespective of the length of their employment. The City filed a cross-motion for relief from the May 31, 1990 consent order. Its application therefor was supported by affidavits of various City officials who asserted that under the original detective designations, 91 officers who were employed more than seven years had received the eighth-step salary. The literal terms of the arbitration award, however, applied to 200 officers, many of whom had been employed for less than seven years, and some of whom had been assigned to the Investigations Bureau immediately upon their initial appointment. It argued that all it had ever intended to undertake by its execution of the consent judgment was the adjustment of the salaries of investigators who had already served for seven years or more. It had neither intended nor foreseen that an officer employed less than seven years would immediately jump from his assigned step to the eighth salary step immediately upon assignment to investigator duties, thus receiving a salary greater than officers having seniority over them. The City therefore sought to *11 have the consent judgment modified to make clear that the arbitration award applied only to investigators serving seven years or more. POBA resisted.
In response to this dispute, the judge, rather than directly addressing the meaning of the consent order itself, agreed to seek clarification from the original arbitrator of the original scope of the arbitration. He consequently submitted to the arbitrator this question formulated by the City's attorney, Paul Mackey:
Did you arbitrate over the amount of compensation due to police officers assigned as detectives when those police officers have had less than seven years of service in the police officer rank?
The arbitrator responded as follows:
The narrow answer to the question posed in Mr. Mackey's letter is that I did not "... arbitrate over the amount of compensation due to police officers assigned as detectives when those police officers have had less than seven years of service in the police officer rank." As Mr. Mackey stated later in his letter, "... there was no dispute in contention as to the amount of compensation a police officer would receive when that police officer had less than seven years of service."
The arbitrator also noted, however, that "unless there is something that I am missing or not aware of," he thought that all investigators, irrespective of length of service, would be entitled to the former detective's salary.
Following the arbitrator's response, the trial judge conceded that the precise issue of the entitlement of an investigator employed as an police officer for less than seven years had been neither submitted to nor decided by the arbitrator. He concluded, however, that the entire controversy doctrine applied to the award and that since the City could have submitted that issue to the arbitrator but did not, it was bound by the literal terms of the arbitration award and could not challenge it in any respect or to any degree. We disagree, concluding that the entire controversy doctrine was improvidently applied in the circumstances here.
To begin with, there is prima facie substantive merit in the City's argument. First, as a matter of past practice, there was *12 never any deviation from the scheme of paying an enhanced salary only to those who had served a minimum of seven years as a police officer. The detective salary was, in effect, treated as an eighth incremental salary step for those serving that minimum period who were assigned as detectives. Conversely, an officer was not eligible for designation as detective with the attendant salary increase until he had served the minimum period. As the affidavits submitted by the City in support of the order to show cause indicate, payment of the eighth-step salary to officers who had not yet reached the seventh step would impose a considerable financial burden on the taxpayers[1] and would have the capacity to result in a variety of departmental problems as well.
We are also satisfied that the arbitrator's dictum respecting the financial consequence of the investigator assignment is in no way binding. He had not previously considered the issue, and the parties had not been afforded the opportunity of addressing it. And while his view might well constitute one possible interpretation of the collective negotiation agreement in the light of the rationale of the arbitration award, it certainly was not the only possible interpretation. For example, the focus could well be placed on the incremental aspect of the detective's salary as the last step on the scale rather than as a separate "job" salary. In that case, it might be that the agreement would be interpreted as affording to officers assigned as investigators before serving seven years only the incremental value of the detective salary added to their appropriate step salary rather than as entitling them to the full detective salary. The agreement might also be construed as *13 entitling investigators to the additional compensation only after seven years of service on the force. While we do not suggest which of various possible interpretations might prevail, it is nevertheless clear that the arbitrator's rather off-the-cuff view is not the only available interpretation consistent with the rationale underlying the award.
Because of the public interest involved in a fair resolution of this issue in a manner fully according with procedural due process, we are convinced that it must be addressed on its merits in the appropriate forum, namely by way of supplementary arbitration. We are also convinced that the entire controversy doctrine was inappropriately applied in the circumstances here to preclude proper consideration of this issue.
As the courts of this state have repeatedly explained, the entire controversy doctrine is equitable in nature and is fundamentally predicated upon "judicial fairness and will be invoked in that spirit." Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 343, 476 A.2d 250 (1984). See also Cogdell v. Hospital Center at Orange, 116 N.J. 7, 27, 560 A.2d 1169 (1989); Cafferata v. Peyser, 251 N.J. Super. 256, 261, 597 A.2d 1101 (App.Div. 1991). See generally Brown v. Brown, 208 N.J. Super. 372, 506 A.2d 29 (App.Div. 1986). It is intended to compel the adjudication of all components of a legal controversy in a single litigation as a matter of fairness to the parties and protection of the judicial system from unnecessary waste, inefficiency, and delay. Cogdell, 116 N.J. at 15, 560 A.2d 1169. But, as we said in Cafferata, "... its application requires, as a matter of first principle, that the party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action." 251 N.J. Super. at 261, 597 A.2d 1101. It is clear that neither the desiderata underlying the doctrine nor the considerations of fundamental fairness which condition its application are apposite here.
We are not dealing here with a party's withholding of a constituent claim of the overall controversy. We are dealing, *14 rather, with an arbitration award affecting public employment whose literal implementation raised questions not originally considered by the parties or the arbitrator. The City, in effect, was seeking limitation of the scope of the arbitration award consistent with its view of the actual subject of the arbitration. It was not attempting to litigate a distinct and separable component of its dispute with POBA. Nor was its aim to enlarge either the scope of the controversy or the scope of the award. It was attempting only to more precisely delineate the scope of the award to whose confirmation it had agreed by executing the consent judgment. As it turned out, the scope of the consent judgment was ambiguous because the scope of the arbitration award was ambiguous. Thus the relief the City sought was not avoidance of the obligations imposed upon it by the consent judgment but only the clarification of those obligations. That in turn required clarification of the arbitration award by resubmission to arbitration for the address of the theretofore unconsidered issue respecting investigators who had served less than seven years. See Todd Shipyards Corp. v. Indus. Union of Marine & Shipyard Workers of America, 242 F. Supp. 606 (D.N.J. 1965); Sandoz v. Cassise, 212 N.J. Super. 246, 514 A.2d 863 (Law Div. 1986). We are of the view that the City was clearly entitled to that relief in the public interest despite its consent to the entry of the ambiguous confirmation order. Cf. River Vale Planning Bd. v. E & R Office Interiors, Inc., 241 N.J. Super. 391, 402, 575 A.2d 55 (App.Div. 1990); Infante v. Gottesman, 233 N.J. Super. 310, 558 A.2d 1338 (App.Div. 1989). In these circumstances, we do not see that the entire controversy doctrine is applicable at all.
We further note that in arbitration matters, the arbitrable question is ordinarily narrowly framed. Moreover arbitration by its nature does not provide a forum conducive to extensive issue and party joinder or to the according of a variety of remedies. See, e.g., Thornton v. Potamkin Chevrolet, 94 N.J. 1, 462 A.2d 133 (1983). The preclusionary consequences of the entire controversy doctrine must consequently *15 be cautiously applied to litigation involving limited-issue arbitration and only where necessary to achieve the purposes and policy of the doctrine. The underlying problem the City faced here and which it appreciated only after the arbitration was concluded was the result of an insufficiently precise framing of the arbitrable question. It is no more responsible for that imprecision and the consequent dispute over the meaning of the award than the POBA is. We see no basis in any preclusionary doctrine for depriving the parties and the public of a fair opportunity, by supplementary arbitration, to eliminate the circumstantial ambiguity of the original award.
Finally, as we have noted, the public interest here involved is considerable, not only as a matter of tax dollars but also insofar as the effective and efficient administration of the police department of a major city is involved. Mechanical application of an equitable preclusionary rule here prejudiced that interest without, insofar as we can determine, affording any significant offsetting advantage either to the parties, the judicial system or the public. In sum, Jersey City should have been permitted to submit to supplementary arbitration the question respecting the proper salary to be paid under its collective negotiation agreement to investigators who have served less than seven years.
We reverse the order of the Chancery Division appealed from and remand for submission to supplementary arbitration of the disputed compensation issue.
NOTES
[1] For example, a second year officer assigned as a detective in 1990 would receive a salary of $42,394 as opposed to the regular second year salary of $24,931, or an increase of $17,463 for his services as a detective. Although the total additional salary for all investigators serving less than seven years was not calculated, it is obviously a matter of many hundreds of thousands of dollars.