687 A.2d 771

LESLIE A. HYNES, JOHN F. DALY, THOMAS J. KING, PHILIP A. CENTINEO, ROY OLSEN, MICHAEL E. HEGARTY, WILLIAM T. MULLEN, JOHN P. NEIDHARDT, JAMES J. KEARNY, JAMES E. WADE, WILLIAM A. KOLFENBACH, TRUSTEES OF THE DISTRICT COUNCIL IRONWORKERS PENSION, WELFARE, ANNUITY, VACATION, TRAINING PROGRAM TRUST AND INDUSTRY ADVANCEMENT FUNDS OF NORTHERN NEW JERSEY, PLAINTIFFS–RESPONDENTS, v. GEORGE R. CLARKE, DANIEL N. HERRES, JR., WILLIAM J. LARUSSO, JOHN D. STEINMETZ, WALTER F. STEINMETZ AND GREGORY P. TEMPLIN, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted January 15, 1997—Decided January 28, 1997.

Before SHEBELL, BAIME and PAUL G. LEVY, JJ.

*Craner, Nelson, Satkin & Scheer*, attorneys for appellants (*John A. Craner*, on the brief).

*Jardine & Pagano*, attorneys for respondents (*Joseph R. Pagano*, on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

Rise Steel, Inc. ("Rise Steel") instituted suit in the Chancery Division, Middlesex County, on June 6, 1995, to vacate an arbitration award issued against it on May 21, 1995. It named as defendants the District Council of Ironworkers Welfare, Pension,

Vacation, Annuity, Training Program, and Industry Advancement Funds ("Funds"), the arbitrator, the Funds' attorney, all the employees of Rise Steel, including the six defendants in the present action, George R. Clarke, Daniel N. Herres, Jr., William J. LaRusso, John D. Steinmetz, Walter F. Steinmetz and Gregory P. Templin.[1]

On June 23, 1995, while the Middlesex County action was pending, the Funds requested arbitration against the six employees of Rise Steel, seeking to hold them each personally liable for a portion of the monies owed by Rise Steel on a theory of conspiracy between Rise Steel and defendants to divert monies that otherwise would have gone to the Funds. On December 9, 1995, the arbitrator entered an award against defendants holding them liable for the following amounts: George R. Clarke owed $6,290.36; Daniel N. Herres, Jr. $10,013.00; William J. LaRusso $5,010.29; John D. Steinmetz $11,442.29; Walter F. Steinmetz $1,924.11; and Gregory P. Templin $5,152.07. These awards totaled $39,832.12. The total award against Rise Steel in the initial arbitration proceeding was $157,936.12.

On March 21, 1996, the present appellants filed an answer and cross-claim in the litigation in Middlesex County brought by Rise Steel. Appellants sought to vacate the arbitration award noting among other things that they were never Union members and that the arbitrator lacked jurisdiction. The Funds, on March 15, 1996, had instituted this action by way of a Verified Complaint and Order to Show Cause in the Law Division, Essex County, seeking to confirm their arbitration award against the six appellants. The Case Information Statement, which accompanied the Verified Complaint, and the certification required by R. 4:5–1(b), failed to mention the pending action in Middlesex County.

Appellants moved to dismiss the Essex County suit or, alternatively, to transfer the matter to Middlesex County and to consoli-

---

[1] The complaint originally referred to "John Does," but a subsequent amendment named them individually.

date it with the case pending there, relying upon *R.* 4:30A and *R.* 4:29–1. They also moved, pursuant to *R.* 1:10–3, for an award of counsel fees for the failure of the Funds' counsel to comply with *R.* 4:5–1(b), or in the event the complaint was not dismissed or the case transferred, they requested an opportunity to defend on the merits based on the lack of jurisdiction of the arbitrator. The judge rendered a written opinion on April 19, 1996. He denied appellants' motion, refused leave to defend on the merits, and entered final judgment against appellants. This appeal followed and we reverse.

Plaintiffs in this action are the trustees of funds established under collective bargaining contracts to provide fringe benefits to ironworkers. The collective bargaining agreements were entered into by five ironworker local unions that bargain under the trade name of The District Council of Ironworkers of Northern New Jersey ("District Council"). Although employed by Rise Steel as ironworkers, defendants are not and have never been members of any of the five local unions.[2] Rise Steel was a party to one such Collective Bargaining Agreement ("Agreement") with the District Council. Under Article XII of the Agreement, the employer, in addition to paying the wages of the Agreement, was also required to pay to the Funds a specified amount of money for each hour worked by a covered ironworker in the employ of a particular employer. The Agreement set forth a method of contribution that required the employer to buy a stamp from the Funds which was equivalent to the amount of money required under the Agreement for each hour of employment covered by the fringe benefit Funds, and to submit reports to the Trustees of the Funds.

Section 12.4, subsection A of the Agreement, in pertinent part, declared:

> (6) that the Trustees of either or all of the aforenamed Trusts or Funds may maintain an action in their name as an entity, or in their names as Trustees of their respective Trust, in any Court and in any jurisdiction, or before an arbitrator as hereafter provided *to claim, recover and collect any amount or amounts due from*

---

[2] The arbitrator mistakenly stated in his opinion they were union members.

*any Employer for contributions or sums due to their respective Trust or Fund
. . . .*

*(7) The Trustees of any Fund or an alleged delinquent Employer may request arbitration of any alleged delinquencies or breach of agreement regarding Fund contributions* and arbitration must be heard within thirty (30) days after such request. *The Trustees may join an individual ironworker as a party to any such arbitration proceeding relating to an alleged delinquency or a breach of agreement regarding Fund contributions in which such ironworkers may be involved.* Each ironworker subject to this Agreement does hereby, through his duly recognized representative, consent to such joinder and to the issuance of an award binding upon him in connection therewith . . . .

[Emphasis added.]

During an audit of employers to insure compliance with the Agreement, the Trustees of the Funds uncovered delinquencies and alleged that Rise Steel, instead of paying the contributions to the Funds, paid those contributions to its employees, the defendants-appellants in this action. Appellants deny that they in any way received contributions the employer owed to the Trustees. They contend they were only paid by Rise Steel for services actually performed by them, with appropriate deductions, and that they also performed work in capacities other than as ironworkers.

The arbitrator, in rendering an award against the six workers, stated:

On May 21, 1995, pursuant to . . . Article 12.4(A)(7) of the [Collective Bargaining] Agreement, an arbitration award was issued by this Arbitrator in the matter between the Claimant Fund Trustees and Rise [Steel, Inc.], finding that Rise had employed ironworkers for periods of time between 1990 and 1994, but failed to prepurchase a single stamp for all Funds for each hour equivalent of gross wages paid and was delinquent in contributing those monies to the funds. The amount of the delinquency was determined to be $102,941.63, as established through an audit performed by Joseph Stern, C.P.A., auditor for the Funds. Despite notice of the claim and an opportunity to be heard, Rise did not appear at a scheduled arbitration hearing to defend its position or contest the amounts due and owing. As a result, an arbitration award was issued therein, and together with interest and contractual obligations, it was ordered that Rise was obligated to the Funds in the amount of $157,936.12.

On June 23, 1995, Joseph R. Pagano, Esq., Counsel to the Funds, forwarded to this Arbitrator a request for a hearing, pursuant to Article 12.4(A)(7) to determine if individual ironworkers were liable for the hourly contributions to the Funds when, as alleged by the Funds, Rise compensated the individual workers directly but did not withhold nor pay contributions contractually due the Funds.

&ast; &ast; &ast; &ast;

The Funds relied on an audit of the payroll records and certain books of Rise. In addition, Mr. Stern testified that, after his review of the payroll records, he prepared individualized itemized accountings of the date of payments (by payroll or other company check), under reported hours of work, amounts of cash (check) payments (in lieu of monies to be paid to the Funds) and total amounts alleged due from each individual.

### In a footnote to the award, the arbitrator stated:

[I] did not find the Individual Ironworkers incredible in their testimony or denials of wrongdoing. They believed their acceptance of money, in the form received from Rise, did not violate the Agreement nor deprive the Funds of contributions due and owing. Moreover, they did not believe that their actions were wrong. The repeated defense of the Individual Ironworkers was that they "did not receive stamp money (fringe benefit contributions) for the hours worked as an Ironworker ... or performing Ironworker duties."

In ruling on appellants' motion against Rise Steel, the judge in the action in Essex County entered judgment against the six after he concluded that the two arbitration claims "are separate and distinct causes of action." The judge found the entire controversy doctrine to be inapplicable. He also refused to consolidate and transfer the case to Middlesex County after inexplicably concluding that the two cases did not "involve common questions of law or fact arising out of the same transaction or series of transactions as contemplated by *R.* 4:38–1."

*N.J.S.A.* 2A:24–8 states that a court shall vacate an award in the following cases:

a. Where the award was procured by corruption, fraud or undue means;

b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon insufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

When an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

The standard for vacating an arbitrator's award has been narrowed dramatically by the Supreme Court's holding in *Tretina*

*Printing, Inc. v. Fitzpatrick & Associates, Inc.*, 135 *N.J.* 349, 357–358, 640 *A.*2d 788 (1994). Under prior law, section d of the statute had been interpreted by a plurality of the Court to allow an appellate court to vacate an arbitrator's decision for a number of reasons, including a mistake in the interpretation of the applicable law. *Perini v. Greate Bay Hotel & Casino Inc.*, 129 *N.J.* 479, 496, 610 *A.*2d 364 (1992). As noted, the *Tretina* Court restricted the grounds, holding that vacation would only be appropriate under section d in the event of fraud, corruption, or similar wrongdoing on the part of the arbitrator. *Tretina Printing, Inc., supra*, 135 *N.J.* at 358, 640 *A.*2d 788.

■ Appellants claim, however, that the arbitrator acted without authority and outside of his jurisdiction in proceeding with a second, separate arbitration against them and issuing an award requiring them to pay monies to the Funds. The plaintiffs counter that the six defendants were bound to arbitrate by the Agreement that their employer had entered into, and that the Agreement authorized the Funds to invoke a separate arbitration action against the workers and to obtain an award against them.

■ We assume for purposes of our decision that non-union workers who accept employment may be bound by the provisions of the collective bargaining agreement of the employer to the same extent that union members would be. *See* National Labor Relations Act, 29 *U.S.C.A.* § 159(a); *Mossberg v. Standard Oil Co.*, 98 *N.J.Super.* 393, 399–400, 237 *A.*2d 508 (Law Div.1967). An arbitrator's authority to adjudicate disputes is based on the consent of the parties, but consent has been de-emphasized in labor cases that hold union and non-union workers bound to the terms of a collective bargaining agreement negotiated on the bargaining unit's behalf, based on an overriding policy decision to assist the speedy resolution of disputes that could disrupt the workplace and labor relations. *See Local 153 v. Trust Co. of New Jersey*, 105 *N.J.* 442, 447–448, 522 *A.*2d 992 (1987) ("Arbitration is designed to resolve disputes arising out of labor contracts without resorting to judicial intervention. It is quick and efficient, and minimizes

disruption in the workplace.") (citations omitted). The employees are held to manifest assent in such situations by choosing to work for a signatory employer, although this assent is usually restricted to terms of the agreement having to do with wages, dismissal, promotions, etc. Employees have been labeled third party beneficiaries to a collective bargaining agreement negotiated on their behalf; however, their rights to sue under such an agreement are generally held by the union, as the signatory to the agreement. *Mossberg, supra,* 98 *N.J.Super.* at 402, 237 *A.*2d 508 (" 'under a collective bargaining agreement the union represents all the employees as to covered matters, and the employees by becoming beneficiaries to the contract give up to the union as their representatives their individual rights to sue or litigate as to the contract.' ") (quotation-cite omitted).

Our courts have repeatedly held that "every intendment is indulged in favor of an award or decision made by arbitrators and that such award or decision is subject to impeachment only in a clear case." *Palizzotto v. Local 641,* 67 *N.J.Super.* 145, 150, 170 *A.*2d 57 (Ch.Div.1961), *aff'd* 36 *N.J.* 294, 177 *A.*2d 538 (1962). Nonetheless, our Supreme Court has specifically held that "[i]n the absence of an express contract provision conferring authority on the arbitrator, it is uniquely within the province of the courts, and not arbitrators, to make the initial and threshold determination regarding the arbitrability of a particular issue." *Laborers' Local Union v. Interstate Curb & Sidewalk,* 90 *N.J.* 456, 463, 448 *A.*2d 980 (1982). Thus, "whether the dispute in question is arbitrable under the terms of the arbitration clause is a matter for judicial determination." *P.T. & L. Const. Co. v. Teamsters Local 469,* 131 *N.J.Super.* 104, 114, 328 *A.*2d 642 (Law Div.) (citing *John Wiley & Sons, Inc. v. Livingston,* 376 *U.S.* 543, 84 *S.Ct.* 909, 11 *L.Ed.*2d 898 (1964); *International Union of Electrical, Radio & Machine Workers v. Westinghouse Elec. Corp.,* 268 *F.*2d 352 (3rd Cir.1959)), *aff'd* 66 *N.J.* 97, 328 *A.*2d 603 (1974). Furthermore, "where an arbitration award does not draw its essence from the bargaining agreement it will not be enforced by the courts."

*Belardinelli v. Werner Continental, Inc.,* 128 *N.J.Super.* 1, 7, 318 *A.2d* 777 (App.Div.1974).

Here, we are convinced that the arbitration clause of the Agreement did not grant the arbitrator the power to entertain an independent subsequent action against these individual ironworkers. We, therefore, need not decide whether the Agreement granted the arbitrator the authority to impose liability on the workers to pay delinquencies owed to the Funds by the employer.

█ Only the Agreement can dictate the scope of the arbitrator's jurisdiction and powers. As noted above, section 12.4, subsection A, paragraph 6 provides that the Trustees may maintain an action before an arbitrator "to claim, recover and collect any amount or amounts due from any Employer for contributions or sums due to their respective Trust or Fund." Paragraph 7 then provides that either the Trustees or an alleged delinquent Employer may request arbitration "of any alleged delinquencies or breach of agreement regarding Fund contributions and arbitration." Further, they "may join an individual ironworker as a party to any such arbitration proceeding." Additionally, delinquent employers and ironworkers joined in the arbitration "agree that they are obliged to present to, and litigate before, the Arbitrator all defenses of whatsoever type or nature then existing, including the defense of arbitrability and the Arbitrator is empowered to hear and determine the same and issue an award."

Thus, under the language of the Agreement, it is clear that the arbitrator was specifically granted authority to join individual ironworkers in the first proceeding against Rise Steel, which the Funds brought to collect delinquencies. However, the language of the Agreement provides only for their joinder in a proceeding against the employer. The arbitrator had no right to expand the provisions of the Agreement to permit a subsequent independent arbitration against the ironworkers. *Scotch Plains–Fanwood Bd. of Educ. v. Educ. Ass'n.,* 139 *N.J.* 141, 149, 651 *A.2d* 1018 (1995) (stating that the "scope of an arbitrator's authority depends on the terms of the contract between the parties" and that any "action

taken beyond that authority is impeachable and may be vacated on statutory grounds") (citing *County College of Morris Staff Ass'n v. County College of Morris*, 100 *N.J.* 383, 391, 495 *A*.2d 865 (1985); *Communications Workers, Local 1087 v. Monmouth County Bd. of Social Servs.*, 96 *N.J.* 442, 448, 476 *A*.2d 777 (1984); *In re Arbitration Between Grover & Universal Underwriters Ins. Co.*, 80 *N.J.* 221, 229, 403 *A*.2d 448 (1979)).

The thrust of the Agreement is to hold the employers, as signatories to the Agreement, responsible for their failure to properly contribute to the fund. The Agreement obviously contemplates that a single proceeding would be held charging an employer with delinquency, and presumably allowing for an award against an ironworker if the worker somehow worked in concert with the employer to defraud the Funds or similarly thwart the agreement. *See Belardinelli, supra*, 128 *N.J.Super.* at 7, 318 *A*.2d 777 (" 'The arbitrator's role is to carry out the aims of the agreement, and his role defines the scope of his authority.' ") (quoting *Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co.*, 415 *F*.2d 403, 411–12 (5th Cir.1969), *cert. den.* 396 *U.S.* 1008, 90 *S.Ct.* 564, 24 *L.Ed.*2d 500 (1970)). This was the precise nature of the claims made against appellants in the Chancery action in Middlesex County, as well as in the second arbitration proceeding, which the Funds then sought to enforce in the Law Division in Essex County. The arbitrator in the second proceeding, however, specifically stated:

[I] did not find the Individual Ironworkers incredible in their testimony or denials of wrongdoing. They believed their acceptance of money, in the form received from Rise, did not violate the Agreement nor deprive the Funds of contributions due and owing. Moreover, they did not believe that their actions were wrong. The repeated defense of the Individual Ironworkers was that they "did not receive stamp money (fringe benefit contributions) for the hours worked as an Ironworker ... or performing Ironworker duties"

The power exercised by the arbitrator in the second proceeding exceeded the covenant, and therefore, the arbitrator acted outside the scope of his authority. *See Laborers' Local Union v. Interstate Curb & Sidewalk*, 90 *N.J.* 456, 463, 448 *A*.2d 980 (1982) (" 'in the absence of a consensual understanding, neither party is entitled to force the other to arbitrate their dispute. Subsumed in this principle is the proposition that only those issues may be arbitrated which the parties have agreed shall be.' ") (quoting *In*

*re Arbitration Between Grover, supra,* 80 *N.J.* at 229, 403 *A.*2d 448). The Funds' failure to join the ironworkers as parties at the Funds' initial arbitration against Rise Steel prejudiced them by undermining their opportunity to dispute Rise Steel's position that they "knowingly and voluntarily" agreed to accept compensation from Rise Steel "over the rate cash payments in lieu of fringe benefits."

It is noteworthy that the provisions of paragraphs 6 and 7 of subsection A of the Agreement appear to capture the spirit of the Entire Controversy Doctrine. *See R.* 4:30A. Our Supreme Court has stated that the entire controversy doctrine "seeks to further the judicial goals of fairness and efficiency by requiring, whenever possible, 'that the adjudication of a legal controversy should occur in one litigation in only one court.' " *Circle Chevrolet v. Giordano, Halleran & Ciesla,* 142 *N.J.* 280, 289, 662 *A.*2d 509 (1995) (quoting *Cogdell v. Hospital Ctr.,* 116 *N.J.* 7, 15, 560 *A.*2d 1169 (1989)). The objectives behind the doctrine were outlined in *DiTrolio v. Antiles,* 142 *N.J.* 253, 267, 662 *A.*2d 494 (1995) as follows: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." It is understandable that parties contracting for private litigation through arbitration would have similar goals.

The entire controversy doctrine applies to constituent claims arising during the pendency of the first action that were known to the litigant. *Circle Chevrolet, supra,* 142 *N.J.* at 290, 662 *A.*2d 509. The entire controversy doctrine is equitable in nature, "fundamentally predicated upon 'judicial fairness and will be invoked in that spirit.' " *Jersey City Police v. Jersey City,* 257 *N.J.Super.* 6, 13, 607 *A.*2d 1314 (App.Div.1992) (quoting *Crispin v. Volkswagenwerk, A.G.,* 96 *N.J.* 336, 343, 476 *A.*2d 250 (1984), and citing *Cogdell, supra,* 116 *N.J.* at 27, 560 *A.*2d 1169; *Cafferata v. Peyser,* 251 *N.J.Super.* 256, 261, 597 *A.*2d 1101 (App.Div.1991); *Brown v. Brown,* 208 *N.J.Super.* 372, 506 *A.*2d 29 (App.Div.1986)). The plaintiffs' contention that the Funds only learned of the workers' involvement at the arbitration hearing against their employer, Rise Steel, when the President of that company testified

that he had paid ironworkers cash in lieu of paying fringes on their behalf, is untenable. Even if plaintiffs only learned of the potential claim against the defendants during the arbitration hearing against the employer, they could have sought to join them at that time. Further, despite the plaintiffs' claim that a revelation occurred at the employer's hearing, it appears that an audit of the employer had already been conducted. The evidence used to find that defendants received unauthorized wages consisted of an audit of the payroll records and certain of the employer's books. This evidence would have been available to the plaintiffs at the time of the employer's arbitration. Plaintiffs' subsequent arbitration against the defendants appears to have been instituted only after learning that the award in favor of the Funds and against the employer was uncollectible. This suggests that the inability of the Funds to collect from the employer was the motivating factor in instituting a separate proceeding against the worker, not that the Funds were unaware of the alleged claims.

■ Lastly, defendants request that we find that the plaintiffs acted in contempt of court by failing to include in their Case Information Statement, filed with their Verified Complaint and Order to Show Cause in Essex County, notice of the pending action in Middlesex County between Rise Steel and plaintiffs. The plaintiffs rely on R. 4:5–1(b)(1)–(2) and R. 1:10–3.

R. 4:5–1(b)(1) requires a case information statement to be annexed as a cover sheet to the party's first pleading. The appendix to the rule reveals that a portion of the information required to be annexed includes "all pending actions related to this case, i.e., arising out of the same occurrence or transaction." R. 4:5–1(b)(2) further sets forth that

Each party shall include with the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding, or whether any other action or arbitration proceeding is contemplated; and, if so, the certification shall identify such actions and all parties thereto. Further, each party shall disclose in the certification the names of any other party who should be joined in the action. Each party shall have a continuing obligation during the course of the litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification. The court may compel the joinder of parties in appropriate circumstances, either upon its motion or that of a party.

The comment to *R.* 4:5–1 makes clear that the purpose of paragraph (b)(2) was to implement the philosophy of the entire controversy doctrine.

*R.* 1:10–3 allows for a court, in its discretion, to award attorney's fees against a party that is found in contempt of court. Significantly, the comment to *R.* 1:10–3 states in relevant part:

a party who wilfully fails to comply with an order or judgment entitling his adversary to litigant's rights is properly chargeable with his adversary's enforcement expenses. The authority to grant fees under this rule has, however, been held to apply only to violations of orders and judgments, not to settlements agreements that have not been so memorialized.

While it is clear that the plaintiffs' attorney failed to include information regarding the Middlesex litigation in his Essex County filing, it cannot be said that an order or judgment was willfully violated so as to manifest a contempt for the court. The comment to *R.* 1:10–3 makes clear that the rule only applies to parties who willfully fail to comply with an *order* or *judgment.* Moreover, defendants' counsel made the trial court aware of the pending action in Middlesex in the Motion to Consolidate or Transfer. Therefore, the attorney's delinquency did not bring about any added expense or cause the court to be misguided.

The judgments are reversed. The matter is remanded for entry of a judgment of dismissal.