845 A.2d 729

ROBERT SHOREMOUNT, PLAINTIFF–RESPONDENT,
v. APS CORPORATION AND DANIEL JACQUISH,
DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted March 23, 2004—Decided April 12, 2004.

Before Judges PRESSLER, CIANCIA and PARKER.

*Marcus, Brody, Kessler, Sahner & Weinstein,* attorneys for appellants (*Todd M. Sahner,* on the brief).

*Lundy, Flitter, Beldecos & Berger,* attorneys for respondent (*Phillip D. Berger,* on the brief).

The opinion of the court was delivered by

CIANCIA, J.A.D.

Plaintiff Robert Shoremount filed a minority shareholder action against defendants APS Corporation and Daniel Jacquish in the Chancery Division, Somerset County. It was subsequently dismissed without prejudice upon the agreement of the parties that the matter would be arbitrated. The arbitration was conducted before retired Superior Court Judge William A. Dreier. The dispute was settled. The settlement agreement and an Arbitration Award/Order Confirming Settlement were entered as a final judgment in the Chancery Division.

The settlement agreement required defendants to make certain payments to plaintiff. The agreement was allegedly breached by defendants in that payments were not being made, and payments that were made were in the wrong amounts. Defendants claimed entitlement to certain setoffs which allegedly were outside of and survived the settlement agreement.

Plaintiff moved in the Chancery Division to compel payments pursuant to the agreement. Judge Roger F. Mahon ultimately issued an oral decision in plaintiff's favor, accompanied by an order compelling specific payments to plaintiff. Judge Mahon's rationale was that the arbitration was intended to cover all disputes between the parties and any setoffs that might not have been raised by defendants should have been raised. He concluded that the entire controversy doctrine prevented defendants from now attempting to establish setoff rights to the settlement pay-

ments. Defendants' motion for reconsideration was subsequently granted, adjusting the details of payment.

Defendants appeal contending that the setoff claims were not barred by the arbitration or the entire controversy doctrine. We find no merit to these contentions and affirm, without a full opinion, substantially for the reasons set forth by Judge Mahon in his oral decision. *R.* 2:11–3(e)(1)(A), (E). We add only the following comments.

■ There is sufficient credible evidence in the record to support Judge Mahon's finding that the arbitration was intended by the parties to address the entire relationship between plaintiff and defendants. That relationship was formed by three documents, a purchase agreement, a stockholders' agreement, and an employment agreement. Defendants' contentions notwithstanding, Judge Mahon found that the arbitration settled any and all disputes between the parties. Indeed, the settlement agreement reads in part:

> This Agreement is intended to resolve all disputes between the parties that were brought in a certain arbitration between the parties, and any and all other disputes that have arisen between the parties as a result of one or more of the following agreements:
>
> 1. an Asset Purchase Agreement dated as of July 1, 1998
>
> 2. a Stockholders' Agreement dated as of July 1, 1998
>
> 3. an Employment Agreement between Mr. Shoremount and APS Corporation dated as of July 1, 1998.
>
> . . . .
>
> This Settlement constitutes a release of all of the claims asserted by either party against the other in either the pending litigation or the arbitration.

It also appears that many of the setoff claims now advanced by defendants were raised in arbitration in one manner or another. Judge Mahon did not specifically address each individual setoff claim to see whether or to what degree it was discussed during arbitration. He was satisfied that under the entire controversy doctrine all claims defendants had against plaintiff should have and could have been presented in arbitration. Those that were not presented are now barred.

As we said in *Hynes v. Clarke*, 297 *N.J.Super.* 44, 55, 687 *A.*2d 771 (App.Div.1997):

> Our Supreme Court has stated that the entire controversy doctrine "seeks to further the judicial goals of fairness and efficiency by requiring, whenever possible, 'that the adjudication of a legal controversy should occur in one litigation in only one court.'" *Circle Chevrolet v. Giordano, Halleran & Ciesla*, 142 *N.J.* 280, 289, 662 *A.*2d 509 (1995) (quoting *Cogdell v. Hospital Ctr.*, 116 *N.J.* 7, 15, 560 *A.*2d 1169 (1989)). The objectives behind the doctrine were outlined in *DiTrolio v. Antiles*, 142 *N.J.* 253, 267, 662 *A.*2d 494 (1995) as follows: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." It is understandable that parties contracting for private litigation through arbitration would have similar goals.

■ Nor is there any doubt that under the proper circumstances the entire controversy doctrine is correctly applied to arbitration proceedings. In *Spolitback v. Cyr Corp.*, 295 *N.J.Super.* 264, 270, 684 *A.*2d 1021 (App.Div.1996), we held that homeowners were barred from litigating claims submitted to arbitration as well as those not submitted to arbitration but known at the time. Our rationale went beyond the election-of-remedy limitations contained in *N.J.S.A.* 46:3B–9. A possible ambiguity in the regulation implementing that statute, *N.J.A.C.* 5:25–3.10, arguably left unclear whether certain disputes were barred by the election of remedy limitation. We were nevertheless satisfied that issue preclusion arose from the entire controversy doctrine. We stated:

> Although the "same claim" provision of *N.J.A.C.* 5:25–3.10 may create an ambiguity in this respect, the principles at the heart of the entire controversy doctrine preclude plaintiffs from litigating in this civil action issues of which they were aware at the time of the prior dispute settlement proceeding and arbitration, and which were ripe and amenable to resolution through the Program's dispute settlement procedure. *See generally DiTrolio v. Antiles*, 142 *N.J.* 253, 662 *A.*2d 494 (1995); *Cogdell v. Hospital Ctr.*, 116 *N.J.* 7, 15, 560 *A.*2d 1169 (1989) ("'[T]he adjudication of a legal controversy should occur in one litigation in only one court . . ."); *cf. City of Hackensack v. Winner*, 82 *N.J.* 1, 31–33, 410 *A.*2d 1146 (1980) ("'[T]here are important goals to be achieved from the prudent and selective application in administrative proceedings of such doctrines as *res judicata*, collateral estoppel, and the single controversy rule."); *cf. Perretti v. Ran–Dav's County Kosher, Inc.*, 289 *N.J.Super.* 618, 674 *A.*2d 647 (App.Div.1996).
>
> [*Spolitback, supra*, 295 *N.J.Super.* at 268–269, 684 *A.*2d 1021.]

As Judge Mahon recognized, the entire controversy doctrine is not imported wholesale into arbitration proceedings. He cited to *Jersey City Police Officers Benevolent Assoc. v. City of Jersey City,* 257 *N.J.Super.* 6, 14–15, 607 *A.*2d 1314 (App.Div.1992), where we cautioned that the preclusionary consequences of the entire controversy doctrine are to be applied cautiously to "litigation involving limited-issue arbitration and only where necessary to achieve the purposes and policy of the doctrine." In the present instance, we are satisfied that the equitable underpinnings of the entire controversy doctrine are satisfied by precluding further litigation. Defendants had a fair and reasonable opportunity to raise all setoff claims in the arbitration proceeding. *Cafferata v. Peyser,* 251 *N.J.Super.* 256, 261, 597 *A.*2d 1101 (App.Div.1991). Defendants' claims of "new" setoffs unknowable at the time of arbitration are simply not supported by the record.

The final order of the trial court enforcing the provisions of the settlement agreement is affirmed.