747 A.2d 303 (2000)
329 N.J. Super. 204
Captain Michael PADOVANO, Plaintiff-Appellant,
v.
BOROUGH OF EAST NEWARK, Borough of East Newark Police Department, Kenneth Lindsay, Chief of Police, Defendants-Respondents.
East Newark Branch of Harrison Patrolman's Benevolent Association Local 22, and Michael Padovano, Plaintiffs-Respondents,
v.
Borough of East Newark, Chief of Police and Borough of East Newark Administrator, Kenneth J. Lindsay, Police Commissioner Victor Cerafin, Borough of East Newark Mayor, Joseph Smith, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 2000.
Decided March 17, 2000.
*304 Ronald J. Ricci, Springfield, for plaintiff-appellant in A-3483-98T3 (Fusco & Macaluso, attorneys; Mr. Ricci, of counsel; Mr. Ricci and Anthony J. Fusco, Jr., on the brief).
Stephen J. Edelstein, Florham Park, for defendants-respondents in A-3483-98T3 (Schwartz Simon Edelstein Celso & Kessler, attorneys; Raymond W. Fisher and David M. McCoy, on the brief).
Stephen J. Edelstein, Florham Park, for defendants-appellants in A-4863-98T5 (Schwartz, Simon, Edelstein, Celso & Kessler, *305 attorneys; Mr. Edelstein, of counsel; Raymond W. Fisher and Joseph C. Toris, on the brief).
Jose I. Bastarrika, Passiac, for plaintiffs-respondents in A-4863-98T5 (Fusco & Macaluso, attorneys; Mr. Bastarrika, of counsel and on the brief).
Before Judges STERN, KESTIN and WEFING.
The opinion of the court was delivered by WEFING, J.A.D.
These two appeals arise out of the same factual complex and were argued together before us. We thus consolidate them for purposes of this opinion.

I
Michael Padovano (Padovano) served as a member of the East Newark Police Department for more than twenty years; by 1996, he had achieved the rank of captain. In May 1996, he was served with twelve disciplinary charges arising out of an allegation that he falsely reported that he had been struck by a hit-and-run vehicle, and that he had subsequently attempted to interfere with a departmental investigation of the same. Padovano went on sick leave for injuries he said he received in the accident. In October 1996, he was suspended without pay.
The Borough appointed a hearing officer to hear these charges. Despite the time requirements of N.J.S.A. 40A:14-147, disciplinary hearings did not commence until February 1997. Before us, the parties dispute the reasons for that delay. The hearing officer held three days of hearings, all in February 1997, but did not issue his report until August 21, 1997.
Within his seventeen page written report, the hearing officer sustained three of the charges against Padovano: neglect of duty; conduct subversive of good order and discipline; and conduct unbecoming an officer and gentleman. He dismissed the remaining charges. He recommended that Padavano be removed from the force. Padovano's attorney wrote to the hearing officer, indicating that he intended to move for reconsideration solely on the issue of discipline. The hearing officer responded that he would keep the record open until September 15, 1997 to permit the attorney to do so. A supplementary hearing was finally held on June 15, 1998. In apparent recognition that Padovano had never before been the subject of disciplinary proceedings, the hearing officer changed his recommendation from a dismissal to a 120 day suspension.
The Borough, however, did not agree with the hearing officer's amended recommendation. The Borough commenced a declaratory judgment action seeking a judgment that the hearing officer had no authority to entertain an application for reconsideration. At the same time Padovano commenced an action seeking reinstatement to the police force. Both matters were consolidated and presented to the Law Division on orders to show cause. After hearing oral argument, the Law Division judge ruled in favor of the Borough, and entered a corresponding order on October 7, 1998.
After entry of that order, Padovano learned that the Borough had never adopted an ordinance pursuant to N.J.S.A. 40A:14-118 authorizing the appointment of a hearing officer to hear such disciplinary matters. He then filed a motion for reconsideration with the Law Division judge, arguing that the hearing officer's initial recommendation of termination was void because the hearing officer had never been properly appointed in the first instance. The Law Division judge refused reconsideration, concluding that Padovano was judicially estopped from challenging the authority of the hearing officer, because Padovano had originally taken the position that the hearing officer had the power to grant reconsideration of his earlier decision, an argument that had to posit that the hearing officer was validly appointed at the outset. In A-3483-98, Padovano *306 appeals from the Law Division judge's disposing of his motion for reconsideration.

II
In November 1996, after service of the disciplinary charges, but prior to commencement of the proceedings before the hearing officer, Padovano, who was a member of the East Newark branch of the Harrison Patrolman's Benevolent Association (the PBA), filed a grievance relating to those disciplinary charges. Although the Borough and the PBA had been engaged in labor negotiations for a period of time, they had yet to come to an agreement on the terms of a contract for the period in question. Despite the absence of a contract, the PBA processed Padovano's grievance in accordance with the terms of the prior contract through the first two stages. When the grievance did not result in a favorable resolution, the PBA refused to proceed to arbitration on Padovano's behalf. In April 1997, Padovano filed a demand for arbitration on his own behalf.
In December 1998, the arbitrator ruled that the Borough had violated Padovano's statutory rights by not conducting the disciplinary hearings in a timely fashion; he directed that Padovano be reinstated with back pay. Padovano moved to confirm the arbitrator's award and the Borough moved to vacate it. In A-4863-98, the Borough appeals from the Chancery Division judge's order of April 23, 1999 confirming the award and directing that Padovano be reinstated to the force with back pay. We turn first to the issues projected in that appeal, but before doing so, note for the sake of completeness that Padovano advised us at oral argument that he does not seek to return to active duty with the department. Rather, he seeks reinstatement so that, in addition to collecting back pay, he may submit an application for retirement.

III
The Borough raises several arguments in support of its position that the arbitrator's award should have been vacated rather than confirmed. We do not consider it necessary to address all of those contentions for we agree with the Borough that Padovano lacked standing to prosecute this arbitration proceeding.
As we noted earlier, although the Borough and the PBA had yet to come to terms on the provisions of a contract for the period after December 31, 1995, they conducted themselves in this matter in accordance with the terms of their contract for the period January 1, 1992 through December 31, 1995. The record supports the conclusion that the only item that separated the negotiating parties was economic in nature, and that the grievance and arbitration provisions would be carried forward unchanged. Thus it is entirely appropriate to analyze the respective rights and obligations of the parties in terms of the prior contract. We agree with the Chancery Division judge, that if the Borough was of the view that the failure to execute a new contract was fatal to the conduct of the arbitration, the Borough was obligated to raise that issue before the arbitrator.
Within that contract, Article 20 set forth the grievance procedure in three steps. Under step one, the president of the union discussed the grievance with the chief of the department, who was to answer the grievance within five days. If that did not resolve the matter, the parties proceeded to step two, under which the union presented the grievance in writing to the mayor; the Borough was to answer within ten days. The PBA processed Padovano's grievance in accordance with those two steps. Article 20 concluded by providing that if the matter still remained unresolved, "the Union may demand arbitration of the grievance."
Article 21 of the contract governed arbitration. It provided in part:

*307 Either party may institute arbitration proceedings when the Grievance Procedure has been exhausted, by written demand upon the other party.... Within fifteen (15) days ... the party demanding arbitration shall request PERC to appoint an arbitrator....
...
The decisions of the arbitrator shall be final and binding upon the union, Bargaining Unit and employer.
The language of the contract is unambiguous; the power to invoke arbitration rests with the union, not the individual employee. Such a clause "conferred no individual right upon plaintiff to set in motion the machinery of arbitration." Donnelly v. United Fruit Co., 75 N.J.Super. 383, 399, 183 A.2d 415 (App.Div.1962), aff'd, 40 N.J. 61, 190 A.2d 825 (1963). As the Supreme Court has noted, "absent clear language in the agreement conferring such a right on an employee, the employee organization has the exclusive right to invoke the arbitration provisions of the contract." D'Arrigo v. New Jersey State Bd. of Mediation, 119 N.J. 74, 75-76, 574 A.2d 44 (1990). See, also, Hynes v. Clarke, 297 N.J.Super. 44, 52, 687 A.2d 771 (App.Div.1997) ("Employees have been labeled third-party beneficiaries to a collective bargaining agreement negotiated on their behalf; however, their rights to sue under such an agreement are generally held by the union, as the signatory to the agreement."); Finnegan v. Pennsylvania R.R. Co., 76 N.J.Super. 71, 84, 183 A.2d 779 (Law Div.1962) ("In the absence of an agreement to that effect a union member ordinarily does not have the right to prosecute his grievance to arbitration"); 51A C.J.S. Labor Relations § 445 ("An individual employee has standing to sue to compel arbitration where a statute or the collective bargaining agreement, either expressly or by implication, so provides, but, usually, in the absence of a statute or agreement so providing, an employee, although a member of the union, has no standing to compel arbitration.")
We think it clear that a provision conferring upon the union the power to invoke the remedy of arbitration provides a measure of protection and stability to the employer. The union is charged with the responsibility and discretion to determine which grievances warrant invoking that remedy, with its attendant costs and expenses. The union must, of course, make such decisions fairly and reasonably and, if the union improperly refuses to proceed to arbitration, it may be liable for breaching its duty of fair representation to its member. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).
Padovano stresses, however, that at some point the PBA purported to assign to him its rights to pursue arbitration. By letter dated January 7, 1997, the PBA notified Padovano that the membership had voted not to process his grievance beyond the second step. The letter concluded that Padovano could, if he wished, "proceed with your grievance at your own expense." In September 1998, more than a year after Padovano filed a request for arbitration in his own name, counsel for the PBA wrote to Padovano's attorney and stated, in part:
It appears from your papers that you are proceeding as counsel to the PBA. As you are aware, the PBA elected not to proceed to arbitration on these matters. As the right to proceed to arbitration arises from the Collective Bargaining Agreement between the PBA and the Town, for Officer Padovano to proceed individually he must do so in the name of the PBA. The PBA must, therefore convey standing for him to proceed. In this regard, we have enclosed herewith an Assignment of Rights for you to represent Captain Padovano in the name of the PBA.
Please be advised that Captain Padovano is responsible for all costs associated with his arbitration and any other proceedings arising out of his grievances.
*308 The letter enclosed a document captioned "Assignment of Rights" which Padovano and his attorney executed in due course. The trial court concluded that such an assignment was valid and that, in consequence, the arbitrator did not err as a matter of law when he proceeded with the arbitration. We are unable to agree.
We have already noted that a contract clause restricting the right to pursue arbitration provides a measure of protection to the employer. Permitting the union to assign the right to proceed to arbitration only serves to undermine the employer's protection, however. It allows an employee to proceed to arbitrate a matter the union may have already determined lacks merit and thus exposes the employer to unnecessary cost, expenses and risks. If a union, moreover, could simply assign its rights to a member, it could seek to relieve itself of the hard choices it may confront when fulfilling its duty of fair representation. Vaca v. Sipes, supra.
In this particular instance, the documents upon which Padovano relies were drafted in such a manner that the PBA assumed no responsibility for any of the expenses of the arbitration; the employer was unable to obtain any corresponding benefits for itself. The unilateral action of the PBA in purporting to assign its rights to Padovano required the Borough to participate in an arbitration that it had contracted to avoid. The PBA should not be permitted to subvert the Borough's contractual rights in such a unilateral manner. We see an analogy to the question presented here in the manner in which the UCC has handled the question whether a party may assign its rights under a contract of sale. Under N.J.S.A. 12A:2-210(2), a party may assign its rights "except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract." Here, to permit such an assignment could "increase materially the burden" on the employer by creating the potential for a significantly greater number of matters to proceed to arbitration than otherwise might.
After oral argument in this matter, we asked the parties to conduct additional research on the question of the validity of such an assignment whether in the context of public sector or private sector labor contracts. Their research disclosed only one reported case, Martin v. City of O'Fallon, 283 Ill.App.3d 830, 219 Ill.Dec. 350, 670 N.E.2d 1238 (1996). In that case, the court clearly concluded that the union could not assign to one of its members the union's "right to demand arbitration under the collective bargaining agreement between the union and the City and, thus, compel the City to arbitrate directly with the employee rather than with the union or its designated representative." We agree with the logic and the policy underlying that analysis and conclude that the PBA lacked the authority to assign to Padovano the right to arbitrate this dispute.
Finally, we are compelled to note that the purported "Assignment of Rights" is, textually, wholly silent on the question of assignment. It is not executed by the PBA and does not, apart from its caption, even contain the words "assign" or "assignment." Rather, it is a document under which Padovano assumed responsibility for his own counsel fees and expenses in connection with the proceeding and Padovano and his attorney specifically "recognized that ... [neither had the] ability to bind the PBA in any agreement with the Town."
The result is that the arbitration proceeding was wholly void. The arbitrator exceeded his power by conducting an arbitration that was not in accordance with the Borough's contract and thus the award should have been vacated under N.J.S.A. 2A:24-8(d). Hynes v. Clarke, supra, 297 N.J.Super. at 52, 687 A.2d 771, quoting Belardinelli v. Werner Continental, Inc. 128 N.J.Super. 1, 7, 318 A.2d 777 (App.Div. 1974) ("where an arbitration award does not draw its essence from the bargaining *309 agreement it will not be enforced by the courts.")
In A-4863-98 we reverse the Chancery Division judge's order confirming the arbitration award.

IV
We turn now to the issues projected in A-3483-98. Padovano raises two arguments. He asserts that the Law Division judge erred both when he ruled that the hearing officer lacked any authority to entertain an application for reconsideration and when he applied the doctrine of judicial estoppel to bar Padovano's motion for reconsideration in which he attempted to challenge the fundamental authority of the hearing officer to conduct the disciplinary hearings in the first instance. We agree with the Law Division judge on the issue of judicial estoppel but we are satisfied that the Law Division judge erred in concluding the hearing officer could not hear a request for reconsideration.
The question of the hearing officer's authority to entertain an application for reconsideration requires that we set forth in more detail some of the procedures the Borough followed in this matter. First, we note that neither party supplied to the Law Division judge, or to us, a copy of the formal appointment that was made. That document could well shed light upon the nature and scope of the appointment and its omission has hampered our review of this matter.
We are also compelled to note that the conduct of the Borough throughout has not facilitated a prompt resolution. At the hearing held in June 1998 on Padovano's request to the hearing officer for reconsideration, the attorney for the Borough (who had newly entered the matter and who is not the attorney representing the Borough on appeal) asserted that the hearing officer could not hear an application for reconsideration; he maintained that such a request would have to be presented to the Borough itself. The hearing officer responded by noting that he had, on seventeen occasions, beginning shortly after Padovano's attorney, in September 1997, requested reconsideration, contacted the attorney previously handling the matter for the Borough to request a statement as to the Borough's position on the question of his authority to reconsider his recommendation and had never received any response. In such a posture, the hearing officer was entirely justified in determining that the Borough had waived any objection to his authority.
Before the Law Division judge, the attorney representing the Borough asserted that one of the policy considerations underlying why a hearing officer should not be allowed to reconsider a decision was the risk of post-decision events tainting the impartiality of the hearing officer. He stressed that this hearing officer had become embroiled in a dispute with the Borough over payment of his fees. He further stressed that the hearing officer had a personal relationship with the attorney who had initially recommended his appointment and that attorney was also involved in a dispute with the Borough over his own fees. The attorney argued to the trial court that those two matters "absolutely impeached" the hearing officer's impartiality. We cannot help but note that the Borough on appeal is represented by the same attorney whose relationship with the hearing officer was proffered below as evidence of the hearing officer's taint. In any event, we consider such issues to relate to the weight to be attributed to the hearing officer's decision on reconsideration, not to his power to reconsider.
We note as well that as of January 11, 1999, the date of the Law Division judge's letter opinion denying Padovano's motion for reconsideration, the Borough had yet to take any formal action in response to the hearing officer's report which had been issued some fifteen months earlier.
With that background, we take up the question whether this hearing officer had authority to reconsider his recommendation *310 for appropriate discipline. The Law Division judge concluded, for two reasons, that he did not. He analogized the hearing officer to an administrative law judge and noted that under N.J.A.C. 1:1-18.5(b) applications to reopen a hearing after an initial decision has been filed must be presented to the agency head charged with deciding the matter, not the administrative law judge. He also concluded that under the doctrine of functus officio, the hearing officer lost the authority to perform any further acts after he issued his opinion. Under functus officio, an officer is "without further authority or legal competence because the duties and functions of the original commission have been fully accomplished." Black's Law Dictionary, 681-82 (7th ed.1999). Professor Garner notes, however, that the term "serves the purposes of conciseness but not of lucidity." A Dictionary of Modern. Legal Usage, 377 (2d ed.1995).
In recognition of the doctrine's limitations, courts have not hesitated, in appropriate situations, to decline to apply it. South Plainfield Bd. of Educ. v. South Plainfield Educ. Ass'n, 320 N.J.Super. 281, 294-96, 727 A.2d 71 (App.Div.1999) (authority of arbitrator not exhausted after initial determination; matter remanded to arbitrator for consideration of fiscal impact in crafting appropriate remedy).
We do not consider this matter to be an appropriate one in which to invoke functus officio for, as we noted earlier, the record does not contain the terms and conditions of the hearing officer's initial appointment. If the Borough were of the view that the hearing officer exceeded the authority conferred upon him, it should, at the very least, have demonstrated the parameters of the initial appointment or objected to reconsideration in a timely fashion. It failed to do either.
Further, we are not persuaded by the analogy adopted by the Law Division judge to an administrative law judge's inability to receive motions for reconsideration or rehearing. It has long been settled that:
... administrative tribunals possess the inherent power of reconsideration of their judicial acts, except as qualified by statute. This function arises by necessary implication to serve the statutory policy.... Barring statutory regulation the power may be invoked by administrative agencies to serve the ends of essential justice and the policy of the law.
[Handlon v. Town of Belleville, 4 N.J. 99, 106-07, 71 A.2d 624 (1950).]
There is, as the Law Division judge cited, a particular provision in the administrative code prohibiting an administrative law judge from reopening a matter after filing the initial decision. There is no specific counterpart governing this hearing officer, however. See Mackler v. Board of Educ., 16 N.J. 362, 369, 108 A.2d 854 (1954), holding that a committee appointed to conduct an investigation and report to the Board of Education had the authority to reopen the hearings after having considered the record closed. As the Court noted in Handlon, supra, 4 N.J. at 107, 71 A.2d 624, the power to reopen "cannot be denied except by legislative fiat; and there is none such here."
The authority to reconsider a matter is, of course, conditioned upon reasonable diligence and notice to the affected parties. Ibid. Here there is no question of either reasonable diligence or notice. The hearing officer granted reconsideration before the Borough took any official action in the matter and provided more than ample notice to the Borough; the Borough simply chose not to respond to that notice.
One final issue must be addressed in connection with analyzing the hearing officer's power to grant reconsideration. Padovano, relying on the authority to grant reconsideration, argued to the Law Division judge and to us that the Borough could not disregard the hearing officer's amended recommendation of suspension. The Borough, on the other hand, took the *311 position that the determination of the hearing officer was no more than a recommendation, which the Borough was not required to follow.[1] The Law Division judge ruled in favor of the Borough on this question and we are satisfied that in this regard, it was clearly correct.
Padovano relies upon In re Disciplinary Hearing of Bruni, 166 N.J.Super. 284, 399 A.2d 997 (App.Div.1979). That case is wholly distinguishable, however, for it merely stands for the proposition that a reviewing court, on appeal by a police officer in a non-Civil Service community could not increase the penalty imposed by the municipality. Id. at 290, 399 A.2d 997.
In our view, the status of the hearing officer, who was independent of either party, requires a conclusion that his determinations about an appropriate penalty were no more than recommendations, which the Borough could elect to adopt or disregard in its sound discretion. Adopting Padovano's argument would require a conclusion that the Borough intended to vest in an independent party the decision whether a municipal employee should be retained or dismissed. We see nothing to indicate that the Borough intended to vest the hearing officer with such sweeping powers or that it was authorized by statute to do so.
The final issue the parties argued on appeal relates to the decision of the Law Division judge that Padovano was judicially estopped to question the authority of the hearing officer. As to this, we affirm substantially for the reasons expressed by the Law Division judge in his letter opinion of January 11, 1999.
We have considered, and rejected, the possibility that affirming the Law Division judge's order of January 12, 1999, which applied the doctrine of judicial estoppel, would have the effect of denying Padovano the benefit of our conclusion that the judge erred when he earlier held the hearing officer lacked the authority to grant reconsideration. The order of January 12, 1999 clarified the relief the judge had intended to give in his earlier order and he directed the Borough to take "official action ... with respect to the August 21, 1997 determination of the hearing officer...."
That portion of the order was incorrect; the "official action" of the Borough should have been decided upon after weighing the amended determination of the hearing officer, as well as his initial determination. Because the order of January 12, 1999 precluded that, the Borough must again take up the issue, deliberate upon it, and decide. We do not deem it appropriate to engage in speculation as to whether a different outcome may result; the Borough's governing body must make its determinations based upon a full record, not a truncated one.
In sum, on A-4863-98, we reverse the Chancery Division judge's order affirming the arbitrator's award in favor of Padovano. On A-3483-98, we reverse the order of January 11, 1999, and remand the matter to the Borough for further proceedings.
NOTES
[1] The Borough, when it appeared before the hearing officer on the issue of reconsideration, appeared to take the position that the initial determination of the hearing officer had the effect of terminating Padovano from the department, even though the Borough itself had not acted upon the report and the recommendation embodied therein.