**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4344-15T4

TEAMSTERS LOCAL UNION
NO. 469, AN UNINCORPORATED
LABOR ORGANIZATION AND
ROBERT YAK,

    Plaintiffs-Respondents,

v.

STAFFORD TOWNSHIP AND MAYOR,
TOWNSHIP ADMINISTRATOR AND
ELECTED OFFICIALS OF SAID
TOWNSHIP,

    Defendants-Appellants.

_____

        Argued April 30, 2018 – Decided August 1, 2018

        Before Judges Accurso, O'Connor and Vernoia.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Ocean County, Docket No.
        C-000177-15.

        Jerry J. Dasti argued the cause for
        appellants (Dasti, Murphy, McGuckin, Ulaky,
        Koutsouris & Connors, attorneys; Jerry J.
        Dasti, of counsel and on the brief; Martin
        J. Buckley, on the brief).

        Timothy R. Hott argued the cause for
        respondents.

PER CURIAM

Defendant Stafford Township appeals from a final order confirming a hearing officer's decision to recommend reinstatement and a sixty-day suspension of Township employee Robert Yak pursuant to a grievance filed by Yak's union, plaintiff Teamsters Local Union No. 469, following his termination by the Township. We reverse. The hearing officer's decision was only a recommendation, which the Township could elect to accept or reject in accordance with the authority it reserved to itself in the parties' collective negotiations agreement. The hearing officer's decision was not an arbitration award subject to confirmation by the court under the Arbitration Act, N.J.S.A. 2A:24-1 to -11.

Although there is obviously a "back story" we are not privy to,[1] the essential facts necessary to resolve this appeal are undisputed. The Township suspended and then fired Yak, its Network Administrator, an eighteen-year employee with an

---

[1] We refer to a related unfair practice charge the Union filed alleging the Township discriminated against Yak, a member of the Union's negotiating committee, "for his support of and membership in a labor organization." It was that charge and the Union's allegation the Township Administrator pursued a "personal vendetta" against Yak that, among other things, necessitated the Administrator's recusal and the appointment of an independent hearing officer whose decision gave rise to this appeal.

unblemished record, for conduct unbecoming a public employee. Specifically, the Township alleged Yak accessed and read confidential email of other Township personnel he was not authorized to read.

Following Yak's suspension, the Union filed a grievance on Yak's behalf in accordance with Article XXXI of the parties' collective negotiations agreement.  We quote the provision in full:

### ARTICLE XXXI
### GRIEVANCE PROCEDURE

A. The purpose of this Article is to provide for a peaceful and equitable means of resolving differences between the parties.

B. A grievance shall be defined as any claim, breach, misinterpretation, or misapplication of any express provision of this Agreement.  Disciplinary action with just cause may be the subject of a grievance under this Agreement.

C. <u>The following procedure shall be used to resolve grievances as an exclusive method.</u> All time frames shall be strictly complied with.  Failure to comply with said time frame shall constitute a waiver by either party.

#### Procedure

The grievant shall submit a written grievance giving rise to the issue.  The grievance shall be submitted within five days of the discipline issued to the Township Administrator.  The Township Administrator shall notify the grievant of a

hearing date within 15 working days after submission of the grievance. The hearing shall take place approximately 15 working days after the submission of the grievance, and a written answer shall be provided to the grievant within 10 working days after the hearing. Representatives of the union shall be present during any hearing including the shop steward of record and any witnesses needed. <u>After receiving the answer of the administrator</u> the grievant shall have fifteen days from that point <u>to either except [sic] his response or move it to the arbitration level for a final determination. The arbitrator shall be assigned by PERC [Public Employment Relations Commission] and his decision shall be final and binding on all parties.</u> The cost of arbitrator shall be shared equally by both parties.

[Emphasis is ours.]

When negotiations between the lawyers for the Township and the Union to permit Yak to resign in good standing broke down, after the Township Council refused to accept the terms the lawyers had negotiated, the Union reactivated its grievance. Counsel for the Union closed his letter to the Township's lawyer confirming that fact with the following offer:

Finally, so that no more time be pointlessly wasted, I propose that you and I, on behalf of our respective clients, agree to forego the rest of the grievance procedure and move to the final step by submitting the matter to the New Jersey Public Employment Commission for appointment of an arbitrator to hear and decide the issue in final and binding arbitration as called for in the collectively negotiated agreement. I look

> forward to your prompt reply to this proposal.

The Township refused that offer, insisting the grievance proceed in the normal course to an internal hearing before the matter could be moved "to the arbitration level for a final determination."

Because of the Union's pending unfair practice charge against the Township Administrator, and that he would likely be called as a witness against Yak, the Administrator could not preside over the hearing contemplated by the grievance procedure. Accordingly, the Township, by resolution of the Township Council, appointed Bonnie Peterson, a licensed New Jersey attorney, to serve as the "hearing officer for the Township of Stafford . . . with regard to the pending employment related grievance filed by an employee of the Township."

Nothing in the resolution, however, suggested the Township had reversed position on refusing to submit the matter to binding arbitration or that it was ceding any of the "Management Rights" it "retain[ed] and reserve[d] unto itself" in Article III of the parties' collective negotiations agreement, including "[d]isciplinary action included but not limited to suspension,

demotion, discharge, or . . . other appropriate disciplinary action against any employee for good and just cause."[2]

_____

[2]  Article III provides as follows:

**ARTICLE III**
**MANAGEMENT RIGHTS**

A.  Management Rights

The Employer hereby retains and reserves unto itself, without limitations, all powers, rights, authority, duties and responsibilities conferred and vested in it prior to the signing of this Agreement by the laws and Constitutions of the State of New Jersey and of the United States; including, but without limiting the generality of the foregoing, the following rights:

1.  All management functions and responsibilities which the Employer has not expressly modified or restricted by a specific provision of this Agreement.

2.  The right to establish and administer policies and procedures related to personnel matters, Employer control activities, training, operational functions, performance of services and maintenance of the facilities and equipment of the Employer.

3.  Disciplinary action included but not limited to suspension, demotion, discharge, or takes other appropriate disciplinary action against any employee for good and just cause.

(continued)

6                                                  A-4344-15T4

(continued)

4.   To hire, promote, transfer, assign, schedule, reassign, lay-off, and recall employees to work.

5.   To determine the number of employees and the duties to be performed.

6.   To maintain the efficiency of employees; to establish, expand, reduce, alter, combine, consolidate, or abolish any job or job classification, department or operation or service.

7.   To determine staffing patterns and areas worked, to control and regulate the use of facilities, supplies, equipment, materials and any other property of the Employer.

8.   To determine the number, location and operation of divisions, departments, work selections, and all other work units of the Employer, the assignment of work, the qualifications required the performance standards and the size and composition of the work force.

9.   To subcontract for any existing or future services as determined necessary by the Employer.

10.  To make or change Employer rules, regulations, policies, and practices consistent with the specific terms and provisions of this Agreement.

11.  And otherwise to generally manage the affairs of the employer, attain and maintain full operating efficiency and productivity and to direct the work force.

(continued)

A-4344-15T4

Following three days of hearings involving the testimony of three fact witnesses, including both the Township Administrator and Yak, one forensic computer expert and the admission of nineteen exhibits, Peterson issued a fifty-seven page "decision as hearing officer, concerning [the] disciplinary charges filed by Stafford . . . against employee, Mr. Robert Yak."  Peterson explained her role as "the hearing officer [was] to make findings of fact and credibility to determine whether the employer has established the disciplinary charges against Mr. Yak by a fair preponderance of credible evidence."  Finding the Township proved Yak improperly accessed email but did not establish he read them or passed them to others, it was her "recommendation, that Mr. Robert Yak receive a sixty (60) day suspension, without pay, from his employment."

Nowhere in Peterson's detailed and comprehensive opinion does she suggest she was rendering a final decision binding the

---

(continued)
> The exercise of the foregoing powers, rights, authority, duties and responsibilities of the Employer shall be limited only to the specific and expressed terms of this Agreement and then only to the extent such specific and express terms hereof are in conformance with the Constitution and laws of the State of New Jersey and rules and regulations.

parties.[3]  To the contrary, Peterson noted the Township's rejection of Yak's proposal "to bypass the hearing officer stage of the disciplinary proceedings, and to proceed directly to PERC"; referred to the Township's election "in order to preserve impartiality, . . . and independence in the hearing process . . . to appoint [her] as an independent hearing officer, as an individual professional, rather than an in-house, Stafford Township official"; underscored Yak's entitlement to have the charges against him "explored fully in the hearing process, prior to any final determination, and most importantly, prior to any formal final disciplinary action to be taken"; referred to her decision as "the undersigned hearing officer's recommended disciplinary action"; and "[p]arenthetically" observed that "the parties [might] wish still to engage in discussions, as to amicable means to resolve all issues and to give both sides closure."

A week after Peterson issued her decision, before the Township had taken any action in response, counsel for Yak wrote to the lawyer for the Township advising him "that the Union and Mr. Yak hereby give notice of their respective acceptance of the

---

[3]  We, of course, are not reviewing the hearing officer's decision and have no ability to do so as neither the transcripts of the hearing nor the exhibits entered in evidence are available to us.

decision rendered by [the] hearing officer" and demanded Yak's immediate reinstatement. A few weeks later, counsel for the Township wrote to the Union's lawyer to advise that the Township Council at a recent meeting had reaffirmed its prior decision to terminate Yak and, thus, his "termination remains in full force and effect." The Union's lawyer replied, asserting that "the Township designated Attorney Peterson as the hearing officer to conduct the hearing in place of the Township Administrator. She issued her decision. Once Mr. Yak accepted her 'recommendation' the Township had no further rights under the Grievance Procedure."

The Union and Yak thereafter filed a verified complaint and proposed order to show cause "to confirm a decision arising from a collectively negotiated agreement in accordance with N.J.S.A. 2A:24-1, et seq." Specifically, plaintiffs sought "the court's equitable power and authority to enforce the decision and recommendation of the Hearing Officer." On the return of the order to show cause, the Township argued there was no jurisdiction in the court to enforce the recommendation of a hearing officer, relying on <u>Padovano v. Borough of East Newark</u>, 329 N.J. Super. 204, 219 (App. Div. 2000).

The trial court entered judgment for plaintiffs, finding the decision of the hearing officer "is final and binding in

favor of Plaintiffs" and ordered the Township to reinstate Yak in accordance with the hearing officer's decision. The court found:

> In contrast to Padovano, the [collective negotiations agreement] in this case reflects that the decision of the Hearing Officer with regard to "whether a municipal employee should be retained or dismissed" was intended to bind the parties if accepted by the Union. The language of the [collective negotiations agreement] does not reserve to the Township any right for further action after the grievant accepts the Hearing Officer's decision. The [collective negotiations agreement] provides in relevant part: "[a]fter receiving the answer of the administrator the grievant shall have fifteen days from that point to either except [sic] his response or move it to the arbitration level for a final determination." The express terms of the [collective negotiations agreement] reserves only to the grievant the right to either accept the decision or move it to binding arbitration. The Township unilaterally appoints the Hearing Officer, and plaintiffs may not object without just cause the appointment. This procedure — to utilize a hearing officer — is clearly for the purpose of containing costs in disputed labor matters.
>
> The Court finds that the [collective negotiations agreement] "clearly and unmistakably established" that the Township waived its right to pursue further action once the Hearing Officer makes a determination and the Union accepts the disposition or penalty of the Hearing Officer. The Court finds that the Township intended to vest the Hearing Officer with the power to determine the public employment

> dispute and to thereby divest the parties from binding arbitration once the Union accepted the recommendations of the Hearing Officer as to discipline. The Hearing Officer's determination is binding on the Township pursuant to "Article XXXI Grievance Procedure" of the [collective negotiations agreement].

The Township appeals, contending the hearing officer's recommendation was not a final decision binding the parties, and that the Union's appeal from the Township's decision rejecting the hearing officer's recommendation was to PERC for the appointment of an arbitrator. We agree.

The decision before us for review is whether the trial court was correct that the hearing officer's decision was one subject to confirmation pursuant to N.J.S.A. 2A:24-7, which permits "[a] party to the arbitration" within three months of the award to "commence a summary action . . . for the confirmation of the award or for its vacation, modification or correction."[4] Not even the Union, however, asserts that the

---

[4]  The question being one of law, our review is de novo. See Jones v. Morey's Pier, Inc., 230 N.J. 142, 153 (2017); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Accordingly, we reject the Union's assertion that our role is limited to determining whether the hearing officer's interpretation of the contract was reasonably debatable. That is the standard courts apply to review of an arbitrator's interpretation of a collective negotiations agreement. N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 553 (2006). It has no application here.

proceeding before the hearing officer was an arbitration. Its claimed basis for jurisdiction in the trial court to confirm the decision of the hearing officer, which it concedes was not an arbitration award, was that the Arbitration Act applies "to an arbitration or <u>dispute</u> arising from . . . a collectively negotiated agreement." [Emphasis is the Union's.]

Although it is certainly true that N.J.S.A. 2A:24-3 permits a court to compel an uncooperative party to arbitrate a "dispute" "in the manner provided for in the [parties'] agreement," <u>see</u> <u>Barcon Assocs., Inc. v. Tri-County Asphalt Corp.</u>, 86 N.J. 179, 187 (1981), the Union has not provided us any authority suggesting a court, acting under the Arbitration Act, could affirm, vacate or modify a decision not the product of an arbitration, and our own research has not uncovered such authority. Surely there would have been no role for the court in confirming the decision had the Township Administrator not recused himself. The decision would have remained an internal one, which the Union, if unwilling to accept, could have "move[d] . . . to the arbitration level for a final determination" by an arbitrator assigned by PERC.

Had Yak and the Union instead accepted the Administrator's decision, there would likewise have been no jurisdiction in the Superior Court to confirm the Administrator's decision under the

Arbitration Act. We see no reason to conclude the Township's appointment of an external hearing officer to conduct the internal hearing afforded Yak under the collective negotiations agreement, based solely on a conflict preventing the designated Township official from presiding, changed the character of this pre-arbitration stage of the grievance procedure. The decision rendered by the hearing officer remained the product of an internal hearing conducted by the Township in accordance with the grievance procedure negotiated by the parties, not subject to confirmation under the Arbitration Act.

There is another reason the hearing officer's decision was not one that could be confirmed as an arbitration award under the Act; it was not a final decision, by an arbitrator or anyone else. It was only a recommendation by the hearing officer to the Township. Again, focusing on the question of what would have been different had the Township Administrator presided over the hearing is useful. Here, it illuminates the meaning of the words the parties chose to govern the "procedure [to] be used to resolve grievances as an exclusive method" in their collective negotiations agreement.

The trial court focused, appropriately enough, on the language of the grievance procedure explaining the process after the grievant is in receipt of "the answer of the administrator"

14                                                          A-4344-15T4

following the hearing. That provision provides the grievant fifteen days "to either except [sic] his response or move it to the arbitration level for a final determination." But the court, at the urging of the Union, analyzed the language using a phrase, "hearing officer," not included in the text.

Substituting "hearing officer" for "Township Administrator" in Article XXXI, the court concluded the collective negotiations agreement "'clearly and unmistakably established' that the Township waived its right to pursue further action once the Hearing Officer makes a determination and the Union accepts the disposition or penalty of the Hearing Officer," and that "the language . . . does not reserve to the Township any right for further action after the grievant accepts the Hearing Officer's decision." The court's focus on the role of "the hearing officer" in this particular case obscured what we think is the obvious plain meaning of the text of Article XXXI.

The grievance procedure does not "reserve to the Township any right of further action" following the grievant's receipt of "the answer of the administrator," because it is the answer of the Administrator, that is, the Township. The Township obviously has no right of appeal from its own decision. It has not "waived" anything. If the grievant accepts the decision of the Township to impose discipline, that is the end of it. If

15                                                    A-4344-15T4

not, he has fifteen days to "move it to the arbitration level for a final determination."

But an independent hearing officer, unlike the Administrator, is not the Township. The Township had to act to accept or reject the hearing officer's recommendation, thereby rendering a decision on the grievance, before there was any right in the grievant to accept the Township's decision or move it to the level of binding arbitration. The Union's attempt to accept the hearing officer's recommendation as if it were the Township's decision, short-circuited the grievance process and, if allowed to stand, would convert what was to be an internal hearing into the equivalent of binding arbitration.

That a hearing officer had to be appointed in place of the Administrator to preside over the hearing because of an unfair practice charge the Union had pending against him did not alter the character of this internal hearing. It simply required the Township to act on the recommended decision of the hearing officer in order for the grievant to "receive the answer of the [Township] administrator" on the grievance filed by Yak and the Union, which they could then accept or move to the level of binding arbitration.

The trial court, again focusing on a phrase not included in the text of Article XXXI, found "that the Township intended to

A-4344-15T4

vest the Hearing Officer with the power to determine the public employment dispute and to thereby divest the parties from binding arbitration once the Union accepted the recommendations of the Hearing Officer as to discipline." But ceding the Township's management right of discipline of employees, expressly reserved in Article III, to a person not employed by the Township or elected by its citizens, and thereby "divesting" both parties of their bargained for right of "binding arbitration" to resolve their "public employment dispute" would be extraordinary and there is no support for it, either in the language of the collective negotiations agreement or in the record.

We considered whether a hearing officer's recommended discipline of a police officer was binding on his municipal employer in Padovano. There the municipality served disciplinary charges on a twenty-year member of the police force and appointed a hearing officer to hear the charges. 329 N.J. Super. at 208. The hearing officer sustained three of the charges, including conduct unbecoming. Ibid. Although initially recommending Padovano's termination, the hearing officer granted Padovano's motion for reconsideration and amended his recommendation to a 120-day suspension in light of Padovano's unblemished record. Ibid. The Borough disregarded

17

the hearing officer's amended recommendation and dismissed Padovano from the police force. Id. at 208-09. The question on appeal, as pertinent here, was whether the municipality was required to follow the hearing officer's recommendation. Id. at 218.

We held "the status of the hearing officer, who was independent of either party, requires a conclusion that his determinations about an appropriate penalty were no more than recommendations, which the Borough could elect to adopt or disregard in its sound discretion." Id. at 219. We reasoned that "[a]dopting Padovano's argument" that the municipality was bound by the hearing officer's recommendation, "would require a conclusion that the Borough intended to vest in an independent party the decision whether a municipal employee should be retained or dismissed." Ibid. We found "nothing to indicate that the Borough intended to vest the hearing officer with such sweeping powers or that it was authorized by statute to do so." Ibid.

The trial court declined to follow Padovano based on its view that the collective negotiations agreement "reflects that the decision of the Hearing Officer with regard to 'whether a municipal employee should be retained or dismissed' was intended to bind the parties if accepted by the Union." As we have

already explained, the Agreement does not express such an intent. To the contrary, the Agreement reflects that the decision to retain or dismiss a municipal employee is the Township's, which the employee may either accept or move to binding arbitration. We find the reasoning of Padovano unassailable and follow it here.[5]

The undisputed evidence in the record likewise supports the conclusion the Township did not cede the decision to suspend or terminate Yak to the hearing officer. The Township expressly rejected the Union's suggestion that the parties bypass the internal Township hearing called for in the grievance procedure in favor of simply submitting the matter to binding arbitration in the first instance before an arbitrator appointed by PERC. The resolution appointing the hearing officer does not state the Township was submitting the parties' dispute to the hearing officer for resolution. Instead, it states only that "the filing of a grievance requires the Township to appoint a hearing officer to carefully consider all of the evidence." It certainly did not state the Township was transferring to the

---

[5]  The Union argues Padovano turned on the plaintiff's status as a police officer. The Padovano court's use of the term "municipal employee" rather than "police officer" in the sentence we quoted suggests the opinion was not so limited. See 329 N.J. Super. at 219.

hearing officer the power it reserved to itself in Article III to take "appropriate disciplinary action against any employee for good and just cause."

Further, Peterson's decision makes clear she understood her charge as limited to hearing the evidence, determining whether the Township had carried its burden and, if so, making a recommendation as to discipline, in other words, to act as a hearing officer. The many references in her opinion we quoted make clear beyond doubt that she did not believe she was either acting as an arbitrator or had been asked to assume the role of Yak's employer.

In sum, because the hearing officer's decision was not an arbitration award subject to confirmation by the court under the Arbitration Act, and, indeed, was only a recommendation, which the Township could elect to accept or reject in its discretion, we reverse the judgment in favor of plaintiffs and remand for entry of an order dismissing their complaint.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4344-15T4