**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-0468-20
                  A-1494-20

CONNECTONE BANK,

      Plaintiff-Respondent,

v.

BERGEN PROTECTIVE
SYSTEMS, INC.,

      Defendant-Appellant.

_____

CONNECTONE BANK,

      Plaintiff-Appellant,

v.

BERGEN PROTECTIVE
SYSTEMS, INC.,

      Defendant-Respondent.

_____

Argued October 4, 2021 – Decided November 1, 2021

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3476-20.

Caroline P. Wallitt (Kirschenbaum & Kirschenbaum, PC) of the New York bar, admitted pro hac vice, argued the cause for appellant Bergen Protective Services in A-0468-20 and respondent Bergen Protective Services in A-1494-20 (Kirschenbaum & Kirschenbaum, PC, attorneys; Samuel Atlas and Caroline P. Wallitt, on the briefs).

Peter R. Bray argued the cause for appellant ConnectOne Bank in A-1494-20 and respondent ConnectOne Bank in A-0468-20 (Bray & Bray, LLC, attorneys; Peter R. Bray, on the briefs).

PER CURIAM

In these two appeals, calendared back-to-back and consolidated, defendant Bergen Protective Systems, Inc. challenges two August 7, 2020 Law Division orders, one denying its motion to compel arbitration and to dismiss the complaint without prejudice and the other order granting plaintiff ConnectOne Bank's cross-motion declaring defendant is not entitled to arbitrate certain claims. Defendant also appeals from the September 21, 2020 order denying its motion for reconsideration. In its cross-appeal, plaintiff appeals from a December 18, 2020 order denying its motion in aid of litigant's rights seeking to enforce the order entered on August 7, 2020. Plaintiff also appeals from the

February 4, 2021 order denying its motion for reconsideration. For the reasons that follow, we affirm all of the orders under review.

I.

We summarize the facts from the motion record as follows. Defendant is an electronic security and fire alarms vendor located in Englewood Cliffs. Between 2007 and 2018, defendant and plaintiff, including its predecessor-in-interest, Bank of New Jersey (BNJ), entered into approximately fifty contracts whereby defendant leased, installed, and serviced security, fire, and closed-circuit television systems in various locations in New Jersey for plaintiff. The final contract was executed on October 29, 2018 ("October 2018 contract") and provided for maintenance of a street-facing ATM in Hoboken. The contract contained a section headed "LEGAL ACTION," which provided:

> The parties agree that due to the nature of the services to be provided by [defendant], the monthly or other periodic payments to be made by the Subscriber for the term of this agreement form an integral part of [defendant]'s anticipated profits; that in the event of Subscriber's default it would be difficult if not impossible to fix BPS's actual damages. Therefore, in the event Subscriber defaults in the payment or any charges to be paid to [defendant], the balance of all payments for the entire term herein shall immediately become due and payable, and Subscriber shall be liable for [ninety percent] thereof as liquidated damages and [defendant] shall be permitted to terminate all its services, including but not limited to terminating

A-0468-20

monitoring service, under this agreement and to remotely re-program or delete any programing without relieving Subscriber of any obligation herein.

If [defendant] prevails in any litigation or arbitration between the parties, Subscriber shall pay [defendant]'s legal fees. In any action commenced by [defendant] against Subscriber, Subscriber shall not be permitted to interpose any counterclaim. The parties agree that they may bring claims against the other only in their individual capacity, and not as a class action plaintiff or class action member in any purported class or representative proceeding. Subject to Subscriber's right to bring any claim against [defendant] for up to [$1000] in small claims court having jurisdiction, any dispute between the parties or arising out of this agreement, including issues of arbitrability, shall, at the option of any party, be determined by arbitration before a single arbitrator administered by Arbitration Services[,] Inc., under its Arbitration Rules www.ArbitrationServicesInc.com, except that no punitive damages may be awarded. Service of process or papers in any legal proceeding or arbitration between the parties may be made by [f]irst-[c]lass [m]ail delivered by the U.S. Postal Service addressed to the party's address in this agreement or another address provided by the party in writing to the party making service. Subscriber submits to the jurisdiction and laws of New Jersey and agrees that any litigation or arbitration between the parties must be commenced and maintained in the county where [defendant]'s principal place of business is located. The parties waive trial by jury in any action between them unless prohibited by law. Any action by Subscriber against [defendant] must be commenced within one year of the accrual of the cause of action or shall be barred. All actions or proceedings against [defendant] must be based on the provisions of this agreement. Any other action that

A-0468-20

Subscriber may have or bring against [defendant] in respect to other services rendered in connection with this agreement shall be deemed to have merged in and be restricted to the terms and conditions of this agreement, and this consent to arbitrate shall survive the termination of this agreement.

On January 2, 2020, plaintiff acquired BNJ, becoming successor-in-interest to its contracts. Citing a declining business market, in mid-2020, plaintiff began shutting down several former BNJ branches including those with active contracts with defendant. Consequently, plaintiff sought to terminate what it deemed were now unnecessary contracts with defendant. By October of 2020, plaintiff had terminated all of its fifty contracts. Thereafter, defendant submitted a demand for certification to Arbitration Services, Inc., seeking the sum of $428,494.26 in damages and $214,247.13 in fees relative to the termination of several agreements.

On June 16, 2020, plaintiff filed a complaint for declaratory judgment in the Law Division against defendant seeking to invalidate the contracts entered between the parties and BNJ, alleging in pertinent part that the liquidated damages provisions contained in the contracts, if applicable, are

"unconscionable, unfair, over-reaching, unreasonable, . . . [and] unenforceable,"
and violate the Uniform Commercial Code, N.J.S.A. 12A:2A-108(1).[1]

On July 21, 2020, in lieu of filing an answer, defendant filed a motion to compel arbitration under N.J.S.A. 2A:23B-7(e) and (g), and to dismiss the complaint without prejudice under Rule 4:6-2. In defendant's moving certification in support of its motion, Joseph F. Cioffi, III, its vice president, certified that on October 29, 2018, defendant and BNJ "executed their last contract" relative to an ATM machine in Hoboken. Specifically, Cioffi referenced the arbitration provision in the contract and quoted that "any dispute between the parties or arising out of this agreement, including issues of arbitrability, shall, at the option of any party, be determined by arbitration." Defendant further argued that the October 29, 2018 contract contained a merger

---

[1] N.J.S.A. 12A:2A-108(1) provides:

> If the court as a matter of law finds a lease contract or any clause of a lease contract to have been unconscionable at the time it was made the court may refuse to enforce the lease contract, or it may enforce the remainder of the lease contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

A-0468-20

clause, which bound all previous agreements and required arbitration of disputes at either party's election.

Plaintiff opposed the motion, and filed a notice of cross-motion seeking: (1) a declaration that any claims under the approximately fifty agreements were not arbitrable; and (2) a dismissal or stay of defendant's demand for arbitration filed with Arbitration Services, Inc. In the certification of counsel submitted in support of plaintiff's notice of cross-motion, he certified that the fifty agreements "were pre-printed forms;" some were "identified as equipment leases"; the "agreements provide litigation must be maintained in New Jersey"; and several of the agreements "arguably" contain an "arbitration clause with an arbitration to be administered by a privately-owned Long Island entity (Arbitration Services, Inc.)."

Counsel also certified that "[n]one of the [a]greements [have] a mandatory arbitration clause" or "even mention arbitration." Furthermore, plaintiff's counsel certified in addition to the agreements referenced by defendant in its arbitration demand, "there are three . . . other types of [f]orm [a]greements that were executed," as well as "additional instances where the [f]orm [a]greements annexed to the [a]rbitration [d]emand were executed." Plaintiff's counsel attached a schedule to his certification comparing the sundry form agreements

7

and noted most of the forms that mention arbitration have this provision buried under a paragraph in bold print entitled, "Legal Action."

In addition, plaintiff's counsel argued some forms have no heading for the paragraphs that mention arbitration; some forms provide for a waiver of trial by jury "in actions between them"; some forms mention "arbitration" and "litigation" in the same paragraph; and some forms require arbitration or an action be venued in Bergen County while "simultaneously" requiring an arbitration be exclusively conducted with Arbitration Services, Inc., which has no offices in Bergen County, and is not authorized to do business in New Jersey. Further, counsel certified the forms do not state consistently if arbitration is a mandatory forum for dispute resolution or if an award is binding.

On August 7, 2020, the trial court conducted oral argument on the motion and cross-motion. In denying defendant's motion, the trial court held that:

> I can't find that the parties are compelled for their entire relationship to this arbitration clause when it was clearly written . . . to service one ATM machine. I don't find it fits within the parameters that would require arbitration. And while the [c]ourt certainly does favor arbitration, . . . [it] acknowledges that it is in fact the Federal Arbitration Act [(FAA)] requires it, that requires it when it's knowing that that is in fact what the parties are agreeing to.
>
> Here, the only thing that the parties agreed to was that this particular service agreement for this particular

ATM was subject to arbitration. But it does not deal with the entire transaction, or of the, as counsel has argued, the [fifty] contracts that preceded it. And which some have some arbitration clauses, et cetera.

And, again, it's lack of specificity. The fact that it has some unknown Long Island arbitration, a group to now divest the parties of the ability to sue in [l]aw is too problematic to compel arbitration. So the motion to compel arbitration is denied and the matter will continue in [l]aw.

Two memorializing orders were entered that day; one denying defendant's motion to compel arbitration and the order granting plaintiff's cross-motion requiring litigation of the claims. On August 7, 2020, defendant also filed an answer and affirmative defenses to the complaint. Thereafter, defendant filed a motion for reconsideration, which the trial court denied on September 21, 2020. On October 15, 2021, defendant filed its notice of appeal.

On November 10, 2020, defendant filed an amended demand for arbitration with Arbitration Services, Inc., and an amended answer followed by three days later. On November 30, 2020, plaintiff filed a motion in aid of litigant's rights pursuant to Rule 1:10-3, seeking to direct defendant to immediately withdraw its amended demand for arbitration pending disposition of defendant's appeal. Plaintiff also sought sanctions and counsel fees. In its opposition to plaintiff's motion in aid of litigant's rights, defendant's counsel

9

certified there was no violation of the three prior orders—two entered on August 7, 2020, and the other entered on September 21, 2020—and that its amended demand for arbitration only encompassed twelve contracts containing an arbitration provision. Defendant's counsel also certified that the three prior orders simply declared defendant "is not entitle[d] to arbitrate the claims in the action."

On December 18, 2020, without hearing oral argument, the trial court denied plaintiff's motion in aid of litigant's rights. In its memorializing order entered the same day, the trial court noted "the [c]ourt did not deny the right to arbitrate on contracts that provided for such procedure, but only provided [p]laintiff the right to proceed in law on contract rights that were not so precluded by arbitration." An order to this effect was entered.

Thereafter, plaintiff filed a motion for reconsideration of the December 18, 2020 order, seeking to have it vacated and mandate defendant to withdraw its amended arbitration demand. Specifically, plaintiff asserted: (1) the trial court's decision that one or more of the contracts has a valid and enforceable arbitration clause is inconsistent with the August 7, 2020 order insofar as there was a determination there was no enforceable requirement for the parties to arbitrate; (2) the trial court did not have jurisdiction to enter the December 18,

2020 in light of defendant's pending appeal; and (3) an "after the fact determination" relative to the August 7, 2020 orders did not preclude arbitration and deprived plaintiff of the opportunity to appeal the ruling.

On February 4, 2021,[2] without hearing oral argument, the trial court entered an order and a comprehensive rider to the order denying plaintiff's motion for reconsideration and other relief, but permitted plaintiff to file an amended complaint. In its order, the trial court applied the governing caselaw and Rule 4:49-2.[3] The court concluded plaintiff "failed to prove that the [c]ourt based its decision on a palpably incorrect or irrational basis, . . . failed to

---

[2] The order is stamped "filed" February 3, 2021. This is not germane to our decision.

[3] Rule 4:49-2 provides:

> Except as otherwise provided by R. 1:13-1 (clerical errors) a motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall be served not later than [twenty] days after service of the judgment or order upon all parties by the party obtaining it. The motion shall state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred, and shall have annexed thereto a copy of the judgment or order sought to be reconsidered and a copy of the court's corresponding written opinion, if any.

A-0468-20

consider probative evidence, or . . . consider new information under the circumstances." In addition, it emphasized:

> The [c]ourt properly denied [p]laintiff's motion in aid of litigants' rights because there was no violation of any order. Neither the August [o]rders nor the September [o]rder contain language preventing [defendant] from seeking relief in arbitration for the claims asserted in the [a]mended [d]emand, as they relate to the [twelve] contracts with arbitration provisions. The narrow issues before the [c]ourt were [defendant's] motion to compel arbitration and [p]laintiff's cross-motion for an order declaring that [defendant] is not entitled to arbitrate the claims and disputes that are the subject of this action, and [defendant's] subsequent motion for reconsideration. As the [c]ourt stated in its December [o]rder, the [c]ourt never denied [defendant] the right to arbitrate on contracts that provided for such procedure. The [p]laintiff's subsequent motion in aid of litigant's rights is unable to show that [defendant] violated an order of the [c]ourt, and therefore denial of the motion is the appropriate result.
>
> Plaintiff mischaracterizes the [c]ourt's previous rulings as a conclusion that there is no enforceable agreement to arbitrate any of the parties['] disputes. As this [c]ourt spelled out for the parties in its December [o]rder[,] "the [c]ourt did not deny the right to arbitrate on contracts that provided for such procedure, but only provided [p]laintiff the right to proceed in law on contract rights that were not so precluded by arbitration." Plaintiff also claims in this motion to reconsider, that the contracts containing arbitration provisions should not be adhered to because of deficient arbitration provisions. Plaintiff may not now, in a motion to reconsider, challenge the validity of the arbitration agreements within the [twelve] contracts.

A-0468-20

Plaintiff is free to file a new motion if it chooses to litigate the validity of those arbitration provisions.

Plaintiff asserts that having a portion of the litigation continue in Bergen County, and another portion go on to arbitration would be prejudicial. Plaintiff asserts that costs of litigating in two places concerning the same liquidated damages provisions could expose the parties to different or inconsistent results or could violate the [e]ntire [c]ontroversy [d]octrine [(ECD),] which requires all claims to be litigated in one court. Plaintiff's concerns are without merit. See Waskevich v. Herold Law, P.A., 431 N.J. Super. 293, 298 (App. Div. 2013); see also Alfano v. BBO Seidman, LLP, 393 N.J. Super. 560, 574 (App. Div. 2007) (holding that the [FAA] applied to an arbitration agreement because the transactions at issue occurred between a New Jersey resident and a German corporation in New York). Assuming that the contracts contain valid arbitration agreements, the application of the FAA does not allow for bifurcation.

New Jersey law also allows for bifurcation or allows [p]laintiff to seek a stay of litigation pending arbitration—if it is overly concerned with the potential increased expense and inconsistent results. See [N.J.S.A.] 2A:23B-7(g) (giving parties the ability to stay any proceedings involving claims subject to arbitration, or, if severable, giving the [c]ourt the ability to limit the stay to that claim); see also Hirsh v. Amper Fin. Serv., LLC, 215 N.J. 174 (2013) (holding that non-signatories to an arbitration agreement should not be compelled to arbitrate and their claims should proceed in litigation); Frumer v. Nat'l Home Ins. Co., 420 N.J. Super. 7, 15 (App. Div. 2011) (Appellate Division bifurcating claims without addressing whether the FAA applied). In fact, in Hirsh, the Supreme Court suggested such procedural tools as stays and severance,

13

found at N.J.S.A. 2A:23B-7(g), for managing the parallel proceedings. 215 N.J. at 196[] n.5; see also Frumer, 420 N.J. Super. at 15.

Plaintiff's argument that the bifurcation would violate the [ECD] is unfounded. The ECD is equitably rooted, and its applicability is left to judicial discretion based on the particular circumstances in a given case. Yarborough v. State Operated School Dist. of City of Newark, 455 N.J. Super. 136, 140 (App. Div. 2018); see also Mystic Isle Dev. Corp. v. Perskie & Nehmad, PC, 142 N.J. 310, 322-23 (1995). It is true that under the proper circumstances the ECD is correctly applied to arbitration proceedings. See Shoremount v. APS Corp., 368 N.J. Super. 252, 255 (App. Div. 2004). But, the ECD should not be imported wholesale, and arbitration—with its ordinarily narrow-framed issues—does not "provide a forum conducive to extensive issue . . . joinder." Jersey City Police Officer Benevolent Ass'n v. City of Jersey City, 257 N.J. Super. 6, 14 (App. Div. 1992).

The ECD was intended to compel the adjudication of all components of a legal controversy in a single litigation as a matter of fairness to the parties and protection of the judicial system from unnecessary waste, inefficiency and delay, but in this case the issues between [p]laintiff and [d]efendant are the product of several separate contracts and agreements. The fact that only [twelve] of the [fifty] contracts contained an arbitration provision, was a product of the two parties' intent, and the [c]ourt will not require the parties to arbitrate the claims of the [thirty-eight] contracts that make no mention of arbitration, or to litigate the [twelve] contracts that do reference arbitration. If [plaintiff] was worried about being compelled to arbitrate on some contracts but not others, it should have included arbitration provisions in each contract or

14

none at all. The resulting bifurcation is the product of [plaintiff's] failure to do so.

However, the trial court granted plaintiff's motion to amend its pleading under Rule 4:9-1 to add claims relative to defendant's alleged failure to remove its equipment and overpayments under some of the agreements, which ostensibly arose after its complaint was filed. A memorializing order was entered. These appeals followed.[4]

On appeal, defendant argues the two August 7, 2020 orders and the September 21, 2020 order denying reconsideration should be reversed because: (1) the trial court overlooked the parties' express delegation of arbitrability issues when it improperly ruled on the arbitration provision's scope; and (2) the court improperly denied defendant's motion in part due to its unfamiliarity with the parties' chosen arbitration service.

In its appeal, plaintiff argues: (1) the trial court erred by not stopping the arbitration of claims in the amended arbitration demand since the subject agreements do not have a viable or enforceable arbitration requirements; (2) the law of the case doctrine was violated by the rejection of plaintiff's application

---

[4] On March 11, 2021, we entered an order consolidating these appeals, directed the clerk to issue an accelerated briefing schedule for docket number A-1494-20, and expedite the scheduling of oral argument.

in aid of litigant's rights; (3) the failure to grant reconsideration and enforce the August 7, 2020 order was erroneous; and (4) the failure to grant oral argument was improper and warrants reversal of the subject order.

## II.

Our review of an order denying a motion to compel arbitration is de novo. Knight v. Vivint Solar Dev., LLC, 465 N.J. Super. 416, 425 (App. Div. 2020) (citing Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2009)). When reviewing a motion to compel arbitration, the court applies a two-prong inquiry: (1) whether there is a valid and enforceable agreement to arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement. Martindale v. Sandvik, Inc., 173 N.J. 76, 86, 92 (2002).

When a judge "is 'called on to enforce an arbitration agreement, [the judge's] initial inquiry must be -- just as it is for any other contract -- whether the agreement to arbitrate all, or any portion, of a dispute is "the product of mutual assent, as determined under customary principles of contract law."'" Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 137 (2020) (quoting Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319 (2019)). "Under state law, 'if parties agree on essential terms and manifest an intention to be bound by

A-0468-20

those terms, they have created an enforceable contract.'" Id. at 135 (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)).

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Atalese v. U.S. Legal Servs. Grp., LP, 219 N.J. 430, 442 (2014) (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)). "Simply put, without an agreement to arbitrate, there can be no arbitration." MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds, 974 F.3d 386, 397 (3d Cir. 2020) (citing Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000)).

"[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "Unless the parties have clearly delegated to an arbitrator the decision whether the parties agreed to arbitration, the issue is for a court to resolve." Morgan v. Sanford Brown Inst., 225 N.J. 289, 295-96 (2016) (citing Kaplan, 514 U.S. at 944); see also Knight, 465 N.J. Super. at 428 (holding that "the trial court initially resolves the issues of fact pertaining to the formation of the arbitration

17

provision."); Henry Schein, Inc., 139 S. Ct. at 530 ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); MZM Constr. Co., 974 F.3d at 402 ("[U]nder section 4 of the FAA, [9 U.S.C. §§ 1 to 16,] courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision.").

Whether the parties "clearly delegated" that threshold question about the formation of the agreement to an arbitrator is to be determined by a judge applying the same "elements necessary for the formation of a contract under state law." Morgan, 225 N.J. at 295 (citing Kaplan, 514 U.S. at 944). First addressing defendant's appeal and applying the controlling principles, we conclude there was no error by the trial court in finding that the arbitration provision in the October 29, 2018 contract is enforceable. The parties are sophisticated—plaintiff is a multi-state bank and defendant is a multi-state security company. Therefore, we interpret the arbitration provision through that lens. Kernahan, 236 N.J. at 321-22.

We are satisfied that the arbitration provision set forth in the October 29, 2018 contract comports with the mandate in Atalese requiring clear and unambiguous language addressing waiver of the parties' right to bring suit. 219

N.J. at 445. Moreover, the subject arbitration provision identifies the arbitration entity that would arbitrate the dispute, despite some misgivings by the trial court, which law governs, the venue of the proceeding, and the types of damages to be sought.

On appeal, defendant contends that the question of whether the October 29, 2018 contract covers the parties' entire relationship is one for an arbitrator to decide, not the trial court judge. And, defendant argues the plain language of the agreement indicates that the parties intended to encompass all of their contracts under the terms of their agreement. We disagree.

As already noted, "'whether the parties have a valid arbitration agreement at all' is a 'gateway' question" to be determined by a court of law. Muhammad v. Cnty. Bank of Rehoboth Beach, 189 N.J. 1, 12 (2006) (quoting Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003) (plurality opinion)). This is codified in N.J.S.A. 2A:23B-6(b), which provides that the "court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." Our Supreme Court has held that this language expressly delegates the determination of enforceability of an arbitration provision to the courts. Hirsch v. Amper Fin. Servs., 215 N.J. 174, 187-88 (2013). Included in this duty is assessing whether a "particular claim[] at issue

fall[s] within the clause's scope." Id. at 188 ("Importantly, a court may not rewrite a contract to broaden the scope of arbitration.") (internal quotation marks and citation omitted).

Here, the trial court found the arbitration provision contained in the October 29, 2018 contract was limited to that contract only. The record supports this finding. Moreover, applying N.J.S.A. 2A:23B-6(b) and Hirsh, the trial court, and not an arbitrator, had jurisdiction here to determine whether an agreement to arbitrate exists. Therefore, we reject defendant's first argument.

Defendant's second argument—that the trial court denied its motion, in part, due to its unfamiliarity with the parties' chosen arbitration service—lacks merit and does not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Suffice it to say, the trial court's comment that utilizing the services of Arbitration Services, Inc. is "too problematic" is amply supported by the record. Arbitration Services, Inc. is a privately-owned arbitration service based in Long Island with no ties to Bergen County and no authority to conduct business in New Jersey. However, this does not vitiate the arbitration clause in the October 29, 2018 contract. Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 141 (2020) ("Should the parties prove unable or unwilling to agree upon an arbitrator, the court may exercise its appointment authority in accordance with N.J.S.A.

2A:23B-11 on the application of either party, and the designated arbitrator may conduct the arbitration in accordance with the procedures described in N.J.S.A. 2A:23B-15.") The arbitration clauses under review require "an action" be conducted in Bergen County. Therefore, the trial court was correct in its analysis. Based upon our de novo review, we review all of the orders pertinent to defendant's appeal.

III.

We now turn to the issues raised in plaintiff's appeal. Plaintiff first contends the trial court erred by not stopping the arbitration of claims in defendant's amended arbitration demand, arguing the subject agreements do not have viable or enforceable arbitration requirements. Again, we disagree.

In its December 18, 2020 order, the trial court emphatically stated plaintiff had "the right to proceed in law on contract rights that were not so precluded by arbitration." Based upon our review of the record, plaintiff has failed to present any contradictory evidence. We are satisfied the trial court clearly expressed its reasoning and decision in its December 18, 2020 order. Moreover, the trial court clarified its holding in its February 4, 2021 order and comprehensive rider, and we affirm substantially for the reasons expressed by the court. And, the trial court properly found the "resulting bifurcation,"—referring to the twelve

21

contracts that have an arbitration provision and the thirty-eight contracts that do not—"is the product of [plaintiff's] failure to do so."

We likewise reject plaintiff's second argument that the law of the case doctrine was violated when the trial court denied its motion in aid of litigant's rights. The law of the case doctrine generally prohibits a second judge, in the absence of additional developments or proofs, from differing with an earlier ruling. See Lombardi v. Masso, 207 N.J. 517, 538-39 (2011). The doctrine "is a non-binding rule intended to 'prevent re[-]litigation of a previously resolved issue.'" Id. at 538 (quoting In re Estate of Stockdale, 196 N.J. 27, 311 (2008)).

"A hallmark of the law of the case doctrine is its discretionary nature, calling upon the deciding judge to balance the value of judicial deference for the rulings of a coordinate judge against those 'factors that bear on the pursuit of justice and, particularly, the search for truth.'" Id. at 538-39 (quoting Hart v. City of Jersey City, 308 N.J. Super. 487, 498 (App. Div. 1998)). While the law of the case doctrine is a discretionary, non-binding rule, "[p]rior decisions on legal issues should be followed unless there is substantially different evidence at a subsequent trial, new controlling authority, or the prior decision was clearly erroneous." Sisler v. Gannett Co., 222 N.J. Super. 153, 159 (App. Div. 1987).

A-0468-20

The law of the case doctrine has no application here. Saliently, the same trial court decided all of the orders under review and its decision was consistent throughout the procedural history of the case. The trial court did not depart from its original ruling and expounded upon its decision in the subsequent motions filed thereafter. There was no new controlling legal authority and the trial court's ruling initially on August 7, 2020 was not "clearly erroneous" because it was based on the prevailing case law and the evidence in the record. Sisler, 222 N.J. Super. at 159.

Specifically, plaintiff asserts on appeal the trial court ruled that disputes under all of the agreements were not arbitrable and there was no enforceable undertaking to arbitrate disputes under the agreements. This contention is belied by the record, which clearly reflects the trial court's sound reasoning in respect of the issues presented to it. We therefore conclude there was no error, and the law of the case doctrine does not apply.

Plaintiff's next argument, that the trial court failed to grant reconsideration and enforce the August 7, 2020 order, similarly lacks merit. Our review of motions for reconsideration under Rule 4:49-2 is governed by a deferential standard. Motions for reconsideration are granted only under very narrow circumstances:

Reconsideration should be used only for those cases which fall into that narrow corridor in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.

[Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

"[A] trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Ibid. (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). "Reconsideration cannot be used to expand the record and reargue a motion," and "[a] litigant should not seek reconsideration merely because of dissatisfaction with a decision of the [c]ourt." Cap. Fin. Co. of Delaware Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (second alteration in original) (second quoting D'Atria, 242 N.J. Super. at 401).

Here, we discern no abuse of discretion in the trial court's denial of plaintiff's reconsideration motion. The trial court did not base its initial decision on a "palpably incorrect or irrational basis," and it did not fail to consider evidence. Ibid. (quoting D'Atria, 242 N.J. at 401). We also conclude the trial court did not act in an arbitrary, capricious, or unreasonable manner in denying plaintiff's motion in aid of litigant's rights.

Finally, plaintiff takes issue with the trial court not conducting oral argument in connection with its motion in aid of litigant's rights and motion for reconsideration. Plaintiff asserts its request for oral argument in both instances was ignored, and the trial court did not provide a justification for not scheduling oral argument.

Rule 1:6-2(d) governs oral argument on motions in civil cases and provides in relevant part:

> [N]o motion shall be listed for oral argument unless a party requests oral argument in the moving papers or in timely-filed answering or reply papers, or unless the court directs. A party requesting oral argument may, however, condition the request on the motion being contested. If the motion involves pretrial discovery or is directly addressed to the calendar, the request shall be considered only if accompanied by a statement of reasons and shall be deemed denied unless the court otherwise advises counsel prior to the return day. As to all other motions, the request shall be granted as of right.

A-0468-20

"The denial of oral argument when a motion has properly presented a substantive issue to the court for decision 'deprives litigants of an opportunity to present their case fully to a court.'" Palombi v. Palombi, 414 N.J. Super. 274, 285 (App. Div. 2010) (quoting Mackowski v. Mackowski, 317 N.J. Super. 8, 14 (App. Div. 1998)). "[A] request for oral argument respecting a substantive motion may be denied." Raspantini v. Arocho, 364 N.J. Super. 528, 531 (App. Div. 2003). Under Rule 1:6-2(d), a trial court may decide a motion on the papers when there are no contested facts requiring an evidentiary hearing for disposition. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on Rule 1:6-2(d), (2022); Guzman v. City of Perth Amboy, 214 N.J. Super. 167, 176 (App. Div. 1986). The movant must show there was prejudice warranting reversal if the trial court denies a request for oral argument on a motion. Finderne Heights Condo. Ass'n, 390 N.J. Super. 154, 165-66 (App. Div. 2007).

Here, the trial court was well within its discretion in denying plaintiff's requests for oral argument. The motions did not warrant an evidentiary hearing and the trial court articulated its reasons supporting its decision in each instance. We discern no prejudice or reversible error. Therefore, we reject plaintiff's contention on this point.

26

To the extent we have not addressed a particular argument, it is because our disposition makes it unnecessary or the argument was without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E). In sum, we affirm all of the orders under review in these consolidated appeals.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0468-20